**In re Barbara Louise SWEITZER, Debtor.**

**Bankruptcy No. MM7–88–03040.**

United States Bankruptcy Court, W.D. Wisconsin.

Feb. 22, 1990.

Patricia M. Gibeault, Catherine J. Furay and Axley Brynelson, Madison, Wis., for debtor.

Stephen C. Beilke, Beilke Law Office, Madison, Wis., for Central Trust Co.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

The debtor, Barbara L. Sweitzer, at all relevant times, has been married to Ralph W. Sweitzer. On August 29, 1988, while the Sweitzers were residents of Ohio, Central Trust Company, Inc. ("Central Trust") took a judgment against Mr. Sweitzer in the amount of $12,881.45, which was duly entered and docketed. Shortly thereafter, the Sweitzers moved their residence to Wisconsin. On January 23, 1989, a certified copy of the Ohio judgment was docketed with the Clerk of the Circuit Court, Dane County, Wisconsin.

On December 28, 1988, Mrs. Sweitzer filed a voluntary "no asset" Chapter 7 peti-

tion. She did not give the name of her husband, nor identify him as her spouse anywhere on her Petition or in her Schedules. However, in Schedule B-2, she claimed her "½ interest" in household goods, supplies, and furnishings exempt and on her Schedule of Current Income and Expenditures stated that she was married. In each instance, her spouse was unnamed. On her Statement of Affairs, under the category "Suits, Executions and Attachments," Central Trust's August, 1988 judgment was not listed. Central Trust appeared only on an attachment to Schedule A-3 (Creditors with Unsecured Claims without Priority), as a creditor with a claim in the amount of $11,984.30.

Central Trust did receive notice of Mrs. Sweitzer's bankruptcy. No proceedings were commenced seeking either an exception to discharge or a denial of discharge based on Central Trust's judgment. On May 18, 1989, Mrs. Sweitzer received a discharge.

On July 20, 1989, Central Trust conducted a supplemental examination of Mr. Sweitzer and now seeks to garnish Mr. Sweitzer's wages. The debtor and Mr. Sweitzer contend that the discharge received by Mrs. Sweitzer, pursuant to 11 U.S.C. § 524, enjoins the proposed garnishment.

▮ We must start by considering the nature of the Central Trust claim. 11 U.S.C. § 101(6) defines "community claim" for those nine states, including Wisconsin, that have community property laws:

"community claim" means claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case.

The definition is keyed to the liability of the debtor's property for a claim against either the debtor or the debtor's spouse. If the debtor's property is liable for a claim against either, that claim is a "community claim." H.Rept. No 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) pp. 308-324, U.S.Code Cong. & Admin.News

1978, p. 5787. Whether or not a creditor holds a community claim will be determined by state law. *Matter of Grimm*, 82 B.R. 989, 992 (Bankr.W.D.Wis., 1988); *see* Ginsberg 1 *Bankruptcy* § 10.12[b] (Prentice Hall, 2d ed. 1989).

The definition of "community claim" has been elaborated upon as follows:

Unlike a claim, a "community claim" is a debt owed by the debtor *or the debtor's spouse,* which under state law could have been satisfied from community property that would have passed to the debtor's bankruptcy estate, whether or not such property existed at the commencement of the case. Thus, three criteria must be met before an obligation has the status of a community claim: (1) it must be a debt owed by one of the spouses; (2) it must be satisfiable from community property under applicable state law; and (3) the community property from which the debt could be satisfied under state law must be included within the assets which would pass to the debtor's bankruptcy estate, whether or not such assets exist at the commencement of the case.

Alan Pedlar, *Community Property and the Bankruptcy Reform Act of 1978,* 11 St Mary's L J 349, 351-52 (1979) (emphasis in original).

Clearly, the first of these three criteria is satisfied by the debt which is owed by Mr. Sweitzer. Whether the debt is satisfiable from community property under applicable state law presents a more difficult question.

▮ Pursuant to the Wisconsin Uniform Marital Property Act, marital property is intended by the legislature to be a form of community property applicable to transactions that occurred subsequent to the "determination date." The "determination date" means the last to occur of marriage, 12:01 a.m. on the date that both spouses are domiciled in Wisconsin, or 12:01 a.m. on January 1, 1986. Wis.Stat. § 766.01(5) (1987). In our case, the determination date is some date in late August, 1988, when the Sweitzers became domiciled in Wisconsin. Pursuant to Wis.Stat. § 766.55(3) (1987),

the Wisconsin Uniform Marital Property Act "does not alter the relationship between spouses and their creditors with respect to any property or obligation in existence on the determination date." Because the judgment at issue [1] was an "obligation in existence on the determination date," the Wisconsin Uniform Marital Property Act does not apply to its treatment in so far as its application would alter the relationship between Mr. and Mrs. Sweitzer and Central Trust. That being the case, the non-Wisconsin, controlling jurisdiction must also have a community property scheme, pursuant to which Central Trust's judgment is satisfiable from community property, in order for the judgment to constitute a "community claim."

The authors of the leading commentary on the Wisconsin Uniform Marital Property Act have discussed change of domicile:

> Interesting choice-of-law problems involving the enforcement of a creditor's claim often follow a change of domicile. Courts have tended to apply the law of the place where the debt was incurred both to the categorization of the debt and to the determination of which assets were available for its satisfaction if the spouses resided in that jurisdiction when the debt arose. In Wisconsin, this appears to be mandated by statute. Section 766.55(3) states that Chapter 766 does not alter the relationship between the spouses and their creditors with respect to obligations in existence on the determination date. The determination date for persons moving into Wisconsin after the effective date of the Act is the date they establish marital domicile in Wisconsin. § 766.01(5)(b). If the obligation were incurred in the state of former domicile, its laws will presumably continue to apply.

K. Christiansen, F. Wm. Haberman, J. Haydon, D. Kinnamon, M. McGarity, M. Wilcox, III *Marital Property Law in Wisconsin* § 13.10c at 13–23 (ATS–CLE, 2d ed 1988) [hereinafter cited as *Marital Property Law in Wisconsin*].

The authors cited *Pacific Gamble Robinson Co. v. Lapp*, 95 Wash.2d 341, 622 P.2d 850 (1980), as illustrative of the choice-of-law problems confronting creditors. In that case, a creditor sought recovery in Washington, where the obligor and his spouse were then domiciled, on a promissory note executed by the obligor husband when he and his spouse had been domiciled in Colorado. The court applied the "most significant relationship" test contained in Restatement (Second) of Conflict of Laws § 188 (1971), and considered the expectations of the parties in ruling that Colorado's interest was more significant than that of Washington and should therefore be applied. The court determined that "a fair application of Colorado law to this debt in an action brought in Washington is that the same property subject to payment of a debt in Colorado, including Mr. Lapp's wages and acquisitions, is likewise subject to payment of the debt in Washington, notwithstanding such property is characterized as 'community' under Washington law." *Id.*, 622 P.2d at 857; *but see In re Merlino*, 62 B.R. 836 (Bankr.W.D.Wash., 1986) (upholding Washington Court of Appeals decision which had ruled that a Colorado judgment was entitled to full faith and credit only to the extent permitted under Washington law; accordingly, the Colorado judgment was deemed a separate debt of the husband debtor for which only his separate estate was liable, as neither his community estate nor his wife's separate estate was liable under Washington law.). The treatise authors conjecture that:

> Aided by the statutory directive of § 766.55(3) that Chapter 766 does not alter the relationship between spouses and their creditors for predetermination date obligations, it is likely that if the Wisconsin Supreme Court were confronted with the facts of the *Lapp* case, it would determine that the former state of domicile had the most significant contacts with the transaction, and would apply its laws.

---

1. The judgment was docketed in Wisconsin on January 23, 1989 and is entitled to full faith and

credit pursuant to Wis.Stat. § 806.24(2) (1975).

III *Marital Property Law in Wisconsin* § 13.10c at 13–24.

Like the court in *Pacific Gamble Robinson*, the Wisconsin Supreme Court has frequently used the "grouping-of-contacts" approach embodied in Restatement § 188 as the means by which to resolve choice-of-law questions. Speaking with reference thereto the court in *Matter of Tadych*, 89 B.R. 785, 788–89 (Bankr.E.D.Wis., 1988), wrote as follows:

> According to the "grouping of contacts" or "center of gravity" approach followed in Wisconsin and set forth in § 188 of the Restatement (Second) Conflict of Laws (1971) (*See also, Haines v Mid-Century Insurance Co.*, 47 Wis 2d 442, 177 NW2d 328 (1970); *Urhammer v Olson*, 39 Wis 2d 447, 159 NW2d 688 (1968)) the factors to be weighed, depending on their relative importance in a particular case, include the place that the contract was entered into, the place of negotiation, the place of performance, the location of the subject matter, the domicile or place of business of the parties and similar relevant factors.

"Under this approach the court must examine 'significant contacts, both quantitatively and qualitatively,' and then apply the law of the state which had the greatest contact with the contract." *Matter of Kochell*, 36 B.R. 766, 767 (Bankr.E.D.Wis., 1984), citing *Urhammer v. Olson*, 39 Wis.2d 447, 450, 159 N.W.2d 688 (1968).

■ In our case, it is clear that Ohio had significant contact with the loan on which judgment was taken. The loan was both negotiated and consummated in Ohio. Mr. Sweitzer was domiciled in Ohio both at the time the note was executed and when judgment was taken upon it. The state of Ohio had the greatest, and indeed, only contact with the contract, and its laws should be applied with respect to the claim of Central Trust.

Under Ohio law, "A married person may take, hold, and dispose of property, real or personal, the same as if unmarried." Ohio Rev.Code Ann. § 3103.07 (Baldwin 1953). "Neither husband nor wife, as such, is answerable for the acts of the other." Ohio Rev.Code Ann. § 3103.08 (Baldwin 1953). Furthermore, "Neither husband nor wife has any interest in the property of the other, except as mentioned in section 3103.-03 [regarding the duty to support] of the Revised Code, the right to dower, and the right to remain in the mansion house after the death of either." Ohio Rev.Code Ann § 3103.04 (Baldwin 1953).

■ Central Trust can enforce its judgment under Ohio law only against Mr. Sweitzer and Mr. Sweitzer's property. The second of the three requirements for a "community claim" has thus not been met. The judgment is not satisfiable from community property under applicable state law. Because Central Trust's judgment is not a "community claim" under Ohio law, no 11 U.S.C. § 524(a)(3) injunction bars Central Trust from its garnishment of Mr. Sweitzer's wages.[2]

Because an alternative view also receives support from the treatise authors, I will comment on the case as if the choice of law were made differently from that herein adopted. The treatise says:

> It was clearly intended that the Act not change relationships between spouses and their creditors with respect to any property or obligation in existence on the determination date. § 766.55(3).... Section 766.55(2)(c) leaves such predetermination date relationships unaffected by providing that premarriage obligations and pre-January 1, 1986 (pre-effective date) obligations of a spouse can be satis-

---

**2.** 11 U.S.C. § 524(a)(3) provides:
(a) A discharge in a case under this title—
  (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, ex-

cept a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

fied from nonmarital property of the incurring spouse and from marital property that would have been available but for the marriage or the enactment of the Act. § 766.55(2)(c)1., 2. However, an obligation that arises during marriage and after January 1, 1986, but before the spouse's determination date (i.e., while the spouses were domiciled in another jurisdiction) is not included under § 766.55(2)(c)1. or 2. Such obligations do not fit in any other category under § 766.55(2)(a) to (cm) and are therefore satisfiable as "other" obligations under § 766.55(2)(d).[3] The creditor can recover from the obligated spouse's property that is not marital property and from that spouse's interest in marital property, in that order. § 766.55(2)(d).

**3.** This conclusion presumes that Wis.Stat. § 766.55(2)(d) was intended to supersede any foreign law which might otherwise be applicable by virtue of Wis.Stat. § 766.55(3). However, as cited above, Wis.Stat. § 766.55(3) states without qualification that the Wisconsin Act "does not alter the relationship between spouses and their creditors," not that the Act does not alter the relationship between spouses and their creditors only to the extent that an otherwise controlling foreign law's dispositional scheme does not conflict with Wis.Stat. § 766.55(2)(d). The validity of the presumption is therefore questionable. Note, too, the inherent contradiction of the treatise authors' previously cited statement asserting that "If the obligation were incurred in the state of former domicile, its laws will presumably continue to apply."

**4.** Wis Stat § 766.55(2) (1987) provides:
(2) After the determination date all of the following apply:
(a) A spouse's obligation to satisfy a duty of support owed to the other spouse or to a child of the marriage may be satisfied only from all marital property and all other property of the obligated spouse.
(b) An obligation incurred by a spouse in the interest of the marriage or the family may be satisfied only from all marital property and all other property of the incurring spouse.
(c) 1. An obligation incurred by a spouse before or during marriage that is attributable to an obligation arising before marriage or to an act or omission occurring before marriage may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the marriage.
2. An obligation incurred by a spouse before, on or after January 1, 1986, that is attributable to an obligation arising before January 1,

II *Marital Property Law in Wisconsin* § 6.4c at 6–20 and 6–21.[4] If this alternative view were adopted, and Central Trust had the right to recover from Ralph Sweitzer's interest in marital property, the second requirement for the existence of a community claim would be fulfilled. It would remain to be established that the community property from which the debt could be satisfied under Wisconsin law is included within the assets which would pass to Mrs. Sweitzer's bankruptcy estate.

Central Trust argues, based upon its reading of 11 U.S.C. §§ 541(a)(2) and (6), that future employment income of neither the debtor nor the debtor's spouse is included within the assets which would pass to the debtor's estate.[5] However, presently-owned income received for services ren-

1986, or to an act or omission occurring before January 1, 1986, may be satisfied only from property of that spouse that is not marital property and from that part of marital property which would have been the property of that spouse but for the enactment of this chapter.
(cm) An obligation incurred by a spouse during marriage, resulting from a tort committed by the spouse during marriage, may be satisfied from the property of that spouse that is not marital property and from that spouse's interest in marital property.
(d) Any other obligation incurred by a spouse during marriage, including one attributable to an act or omission during marriage, may be satisfied only from property of that spouse that is not marital property and from that spouse's interest in marital property, in that order.

**5.** 11 U.S.C. §§ 541(a)(2) and (6) provide:
(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(2) All the interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—
(A) the sole, equal, or joint management and control of the debtor; or
(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.
(6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

dered prior to the commencement of a bankruptcy case does constitute property of the estate under 11 U.S.C. § 541(a)(2). There is no requirement that such property be currently in existence for purposes of defining a community claim. 11 U.S.C. § 101(6). Thus, it would appear that future income should be considered property which would pass to the debtor's estate.

Central Trust's position is further contradicted by *Collier*, which states that "... after-acquired community property will be free from pre-bankruptcy creditor claims against either spouse even under those circumstances in which only one spouse has filed a bankruptcy case, provided that neither spouse has committed an act creating a nondischargeable debt." L. King, 3 *Collier on Bankruptcy*, ¶ 524.01[2] at 524–13 and 524–14 (Matthew Bender, 15th ed 1987). *See also* Pedlar, *supra*, at 383; *In re Karber*, 25 B.R. 9, 12 (Bankr.N.D.Tex., 1982) ("if one spouse in a community property state has commenced a bankruptcy case where, as here, no claim is excepted from the debtor's discharge and is not otherwise found to be nondischargeable, and if the nondebtor spouse would not have had a claim excepted from her discharge in a hypothetical case commenced on the same day as the commencement of the debtor's case, then the creditors of either spouse holding community claims on the date of bankruptcy are thereafter barred from asserting claims against after acquired community property."). Pursuant to Wis.Stat. § 766.31(4) (1987), except as otherwise provided, "income earned or accrued by a spouse or attributable to property of a spouse during marriage and after the determination date is marital property."

Under Wisconsin law, one's wages are treated as community property.[6] The anticipation of community property in the form of wages from which Central Trust's judgment could be satisfied under state law satisfies the third element of a community claim. If Wisconsin law, rather than Ohio law, controlled the transaction at issue in our case, it would thus appear that the claim of Central Trust, having fulfilled all three requirements, is indeed a "community claim."

Following this alternative analysis, solely for the sake of argument, it remains to be decided whether there are other defenses to the allegation that the community claim is discharged. Central Trust asserts that due process notice requirements were not met. That is because the debtor did not claim her spouse's future income as community property protected by her discharge, nor claim an exemption in her spouse's future employment income. Central Trust further asserts that property of the debtor was required to be scheduled pursuant to 11 U.S.C. § 521, and that because the debtor failed to schedule her spouse's future income, it is not subject to the discharge received by the debtor. Because future income is not considered property of the estate under 11 U.S.C. § 541(a)(6), however, a debtor would have no apparent reason to schedule it as an asset of the estate. Nonetheless, significant notice concerns remain, where, as here, discharge of the debtor would be said to operate as a discharge of a non-debtor third-party, the debtor's spouse.

11 U.S.C. § 524(b)(2) provides that the discharge injunction granted under 11 U.S.C. § 524(a)(3), (which extends to after-acquired community property), does not apply if:

(A) the court would not grant the debtor's spouse a discharge in a case under chapter 7 of this title concerning such spouse commenced on the date of the filing of the petition in the case concerning the debtor; and

(B) a determination that the court would not so grant such discharge is made by the bankruptcy court within the time and in the manner provided for a determination under section 727 of this title of whether a debtor is granted a discharge.

Section 524(b) thus seems to require objections to the hypothetical discharge of a nondebtor spouse to be filed within the same time limit as objections to the debtor's discharge. The result is that, "for the

---

**6.** " 'Income' means wages ..." Wis.Stat. § 766.01(10) (1987).

first time, the bankruptcy court will be called upon to determine the hypothetical discharge of a nondebtor or to rule upon the hypothetical nondischargeability of one or more of the nondebtor's debts." Pedlar, *supra,* at 384–85.

Professor Pedlar elaborated upon his notice concerns:

> Obviously, because of the time deadlines involved, and the potential for a nondebtor to hide behind his or her spouse's discharge, any notice of the bankruptcy case sent to creditors must list conspicuously the names of the debtor and the debtor's spouse and advise creditors of the necessity for discharge and dischargeability action against the nondebtor if cause exists for such action.
>
> .      .      .      .      .
>
> ... because of the restrictive provisions of sections 523(c)–(d) and 524(b) upon creditor objections to discharge and requests for determinations of nondischargeability of debts of both the debtor and the debtor's spouse, the name of the debtor's spouse must appear on the schedules, or perhaps even on the bankruptcy petition. It must also prominently appear on the notice of the meeting of creditors which is sent to all creditors. This notice must also clearly advise creditors of both spouses of the time requirements of section 523(c)–(d) and 524(a)(3)–(b) concerning both the debtor and the debtor's spouse. This notice is particularly important until creditors of the nondebtor spouse become accustomed to filing discharge and dischargeability complaints in bankruptcy cases not directly involving their debtor. Furthermore, the statement of affairs filed by the debtor should include questions inquiring into transfers made by both the debtor and the debtor's spouse.

Pedlar, *supra,* at 385, 389–90.

■ Professor Pedlar's assertions find support in the Bankruptcy Code and the Bankruptcy Rules, each of which address notice obligations. 11 U.S.C. § 342(a) requires that the clerk of the bankruptcy court shall give "such notice as is appropriate, including notice to any holder of a community claim, of an order for relief in a case under this title." Thus, in community property states, creditors of the nondebtor spouse must receive "such notice as is appropriate" of an order for relief in a case under the Bankruptcy Code. Appropriate notice is provided when creditors of the nondebtor spouse receive notice equivalent to that provided to the creditors of the debtor spouse.

In order for the clerk of the bankruptcy court to comply with his or her notice obligations under 11 U.S.C. § 342(a), debtors must comply with the notice provisions of the Bankruptcy Rules. Pursuant to Bankruptcy Rule 1005, the title of a bankruptcy petition shall include the "name, social security number and employer's tax identification number of the debtor and all other names used by the debtor within six years before filing the petition." Bankruptcy Rule 2002(m), regarding notices to creditors, states that "The caption of every notice given under this rule shall comply with Rule 1005." The Advisory Committee note thereto indicates that "Inclusion in notices to creditors of information as to other names used by the debtor as required by Rule 1005 will assist them in the preparation of their proofs of claim and in deciding whether to file a complaint objecting to the debtor's discharge."

In order for creditors of a nondebtor spouse domiciled in a community property state to receive notice from the bankruptcy court equivalent to that provided to the creditors of the debtor spouse, the title of the debtor spouse's bankruptcy petition would have to contain the name, social security number and employer's tax identification number of the nondebtor spouse and all other names used by the nondebtor spouse within six years before filing the petition, together with the designation that the person so named was the "Nondebtor Spouse." Without such information a creditor faces the enormous burden of first, ascertaining that it has no claim against the debtor named on the petition, second, attempting to ascertain the name of the named debtor's nondebtor spouse, if any, third, ascertaining whether it has a claim

against the nondebtor spouse, and/or grounds to object to the nondebtor spouse's discharge or to the discharge of the nondebtor spouse's debt to the creditor, and, if so, fourth, filing its proof of claim and/or complaint objecting to discharge, all within the stringent time requirements of the Bankruptcy Rules.

In our case, Mrs. Sweitzer did not name Mr. Sweitzer on her bankruptcy petition or in her schedules as her nondebtor spouse. Thus, a creditor taking the extra step of acquiring these documents would still find itself searching for the name of her spouse. Moreover, assuming a creditor did know the name of Mrs. Sweitzer's husband, the failure to include Mr. Sweitzer's bankruptcy history for the previous six years leaves creditors not knowing whether he is entitled to the benefit of the 11 U.S.C. § 524(a)(3) discharge injunction.[7]

Although required by 11 U.S.C. § 541(a)(2) to include "all interests of the debtor and the debtor's spouse in community property" as property of the estate, Schedule B-2 listed only Mrs. Sweitzer's "one-half interest" in household furnishings, adding further confusion to the matter. Mrs. Sweitzer also failed to list Central Trust's judgment under the "Suits, Executions and Attachments" category of her Statement of Financial Affairs. Central Trust was listed as an unsecured claimant in the amount of $11,984.30 in an attachment to Schedule A-3; the parties have stipulated, however, that the judgment was entered in the amount of $12,881.45. It was thus not facially apparent that Central Trust's claim as listed by Mrs. Sweitzer was even related to the judgment taken against Mr. Sweitzer. Although Central Trust received notice of Mrs. Sweitzer's

bankruptcy, that notice was insufficient to enable the clerk of the bankruptcy court to satisfy the requirements of 11 U.S.C. § 342(a).

The fact that the notice provided by the debtor was insufficient does not necessarily preclude application of the 11 U.S.C. § 524(a)(3) discharge injunction against Central Trust. In addition to the exceptions to discharge contained in 11 U.S.C. § 524(a)(3), (cited in full in footnote no. 2), 11 U.S.C. § 524(b) (cited in full in footnote no. 7), contains grounds upon which the discharge injunction will not apply. Neither of these statutes lists insufficient notice to creditors of the nondebtor spouse as a basis for denying application of the discharge injunction. Under the alternative analysis, this court would be required pursuant to 11 U.S.C. § 524(b) to determine the hypothetical discharge of Mr. Sweitzer under 11 U.S.C. § 727 and the hypothetical nondischargeability of Central Trust's claim against Mr. Sweitzer under 11 U.S.C. § 523. There is no suggestion that Mr. Sweitzer has committed any act rendering his debts nondischargeable, nor barring his discharge in bankruptcy. Thus, while technical requirements of notice may have been met, there is an unsettling character to the quality of constructive notice afforded. Surely this character will lead some future court which has to face the problem to a more complete analysis of the constitutionality of the notice provisions or to an immediate resort to "equity."

Continuing our frolic among the various questions raised by defenses which are rendered inapplicable by the determination that Ohio law applies, we may address the internal workings of the Wisconsin statutes. Central Trust cites Wis.Stat.

---

7. 11 U.S.C. § 524(b) provides:
   (b) Subsection (a)(3) of this section does not apply if—
   (1)(A) the debtor's spouse is a debtor in a case under this title, or a bankrupt or a debtor in a case under the Bankruptcy Act, commenced within six years of the date of the filing of the petition in the case concerning the debtor; and
   (B) the court does not grant the debtor's spouse a discharge in such case concerning the debtor's spouse; or

(2)(A) the court would not grant the debtor's spouse a discharge in a case under chapter 7 of this title concerning such spouse commenced on the date of the filing of the petition in the case concerning the debtor; and
   (B) a determination that the court would not so grant such discharge is made by the bankruptcy court within the time and in the manner provided for a determination under section 727 of this title of whether a debtor is granted a discharge.

§ 766.31(3) (1987), which states that "Each spouse has a present undivided one-half interest in each item of marital property ...", and asserts that assuming the Wisconsin Act did apply, the debtor could assert only a one-half interest in marital property. It has previously been established that wages are marital property under the Act. Central Trust thus argues that, notwithstanding the discharge injunction, it is entitled to garnish one-half of Mr. Sweitzer's wages.

Central Trust's argument would fail, however, because the distribution scheme of the Bankruptcy Code preempts that existing under state law. Therefore, the 11 U.S.C. § 524(a)(3) discharge injunction, which bars creditors from pursuing all after-acquired community property, precludes Central Trust from garnishing any of Mr. Sweitzer's wages. This court has commented on this effect previously:

> any state law distinction limiting a creditor to only a portion of the community property assets, or marshaling provisions requiring separate creditors to first satisfy their claims from non-community assets, or provisions granting a spouse reimbursement rights, are not recognized by the Code.... Any attempt to implement the refinements of liability which exist under the laws of the various community property states would have hopelessly complicated an already difficult distribution scheme. Accordingly, to this extent the Code supersedes state law.

*Matter of Grimm,* 82 B.R. at 992, citing L. King, 2 *Collier on Bankruptcy,* ¶ 101.06 at 101–28 and 101–29 (Matthew Bender, 15th ed 1987). Further support for this position is provided by Professor Pedlar, who states:

> In those states such as New Mexico, where creditors of one spouse may reach only a portion of the community property, the state law marshaling restriction is abolished, and all creditors of the same class who hold community claims share pro rata in the distribution of estate property. In this regard, the bankruptcy system deviates from creditors' remedies under state law; however, an attempt to recognize every variation in state law would render distribution of the estate excessively burdensome from an administrative standpoint.

Pedlar, *supra,* at 363. The Wisconsin treatise authors agree as well:

> ... the treatment of types of obligations and the right to payment of claims under the Bankruptcy Code is different from the treatment of such obligations and property available for recovery by creditors under the Act. Therefore, the rules for satisfaction of creditors under § 766.55(2) do not apply. When a case is within the jurisdiction of the bankruptcy court and state and federal rules differ, the federal rules control.

II *Marital Property Law in Wisconsin* § 6.32a(1) at 6–53. Assuming arguendo that Central Trust's claim were indeed a community claim, the Sweitzers' after-acquired property would not be subject to satisfaction of Central Trust's claim as its claim would have been discharged and 11 U.S.C. § 524(a)(3) would operate as an injunction against its collection, unless the notice afforded was deemed to fall short of a constitutional standard or the effect of that notice deemed to be inequitable.

Judgment may be entered consistent with the findings of fact and conclusions of law contained herein.

The court having this day entered its memorandum decision in the above-entitled matter,

IT IS HEREBY ORDERED that the debtor's motion to enforce the discharge injunction contained in 11 U.S.C. § 524(a)(3) against Central Trust Company, Inc. is denied.

Dated this 22 day of February, 1990.