In re Michelle Louise SCHMIEDEL
n/k/a Michelle Hoffman–
Dillman, Debtor.

Bankruptcy No. 94–21332.

United States Bankruptcy Court,
E.D. Wisconsin.

·July 9, 1999.

Christine Wolk, Oshkosh, WI, for debtors.

Thomas S. Wroblewski, for David & Nancy Jolliff.

## MEMORANDUM DECISION ON DEBTOR'S MOTION FOR CONTEMPT AND SANCTIONS AGAINST DAVID AND NANCY JOLLIFF

M. DEE McGARITY, Bankruptcy Judge.

On March 22, 1994, the debtor, Michelle Schmiedel, filed for bankruptcy protection under chapter 7 and received a discharge on June 29, 1994. The debtor filed this motion for contempt and sanctions against David and Nancy Jolliff after the Jolliffs refused to release a judgment lien on her property. The lien arose by judgment entered against her former spouse after the

debtor's bankruptcy was closed and while the Schmiedels were still married.

## FACTS

The material facts are not in dispute. In February 1994, David and Nancy Jolliff filed a civil suit against Donald and Michelle Schmiedel. While that action was pending, Ms. Schmiedel filed a chapter 7 petition. The suit against her was dismissed by the state court without prejudice *sua sponte* on April 5, 1994, because of her pending bankruptcy. Her discharge was granted on June 29, 1994, and the bankruptcy case was closed on the same date. The trustee filed a report that there were no nonexempt assets available for distribution.

On August 1, 1994, a civil judgment was docketed against Donald only. Since the judgment was not limited to Mr. Schmiedel's individual property, the judgment became a lien, or at least a cloud on title, on any real estate in which Mr. Schmiedel had an interest. Wis.Stat. § 806.15(1). This occurred unbeknownst to Ms. Schmiedel.[1] At the time of the judgment, the Schmiedels owned the homestead Ms. Schmiedel resided in as survivorship marital property.

A Judgment of Divorce was granted dissolving the marriage of Donald and Michelle on May 18, 1995. The divorce decree awarded the couple's residence to Ms. Schmiedel, subject to the outstanding mortgage thereon to her parents, Mr. and Mr. Hoffman. The property had been conveyed to the Schmiedels in 1992 by the Hoffmans, who took back a mortgage in the original amount of $36,955.17. The debt to the Jolliffs was not mentioned or assigned in the divorce decree.

The debtor's attorney then filed a motion with the state court requesting that the judgment be amended to clarify its effect. She contended that the judgment against Donald Schmiedel should attach only to his individual property. That motion was denied on the grounds that Ms. Schmiedel did not have standing to bring the motion as she was no longer a party in the action. The state court instead granted leave to pursue the matter in bankruptcy court.

## ARGUMENTS

The Jolliffs contend that Ms. Schmiedel's discharge does not protect her homestead property. They argue that her bankruptcy petition failed to satisfy due process requirements so they could object to the hypothetical discharge of the nonfiling spouse. The debtor did not name Mr. Schmiedel or identify him as her husband in her bankruptcy petition or schedules. Mr. Schmiedel's name did not appear on the notice of the meeting of creditors, and the notice did not advise creditors of both spouses of the time requirements of 11 U.S.C. §§ 523(c)–(d) and 524(a)(3)–(b). The Jolliffs assert that the debt may have been nondischargeable as to Mr. Schmiedel and that the debtor and her former husband committed fraud on the divorce court by not disclosing the Jolliffs' debt.

The debtor points out that the Jolliffs entered judgment against Mr. Schmiedel after the discharge was entered. Since the discharge had been granted and the Schmiedels were still married, this judgment was entered in violation of 11 U.S.C. § 524(a)(3). The Jolliffs failed to file any type of dischargeability complaint against either spouse during the pendency of her bankruptcy, even though they were fully aware of her bankruptcy. Ms. Schmiedel states that the Jolliffs clearly knew the identity of her spouse since the Jolliffs had named both Schmiedels as defendants in their civil lawsuit. Both the Jolliffs and their attorney are included in the debtor's scheduled list of creditors. Attached to the debtor's motion were copies of two

---

1. *See* Wis.Stat. § 806.15(1); *but see* Wis.Stat. § 815.20(1) (judgment lien does not attach to exempt homestead). The debtor only discovered the recorded lien when she attempted to refinance the home in which she had been residing at all pertinent times.

letters to the state court transmitting copies of the bankruptcy petition and notice of the commencement of the bankruptcy case, which were also copied to the Jolliffs' attorney. Ms. Schmiedel was then dismissed from the state court action due to her bankruptcy, giving the Jolliffs ample notice of the bankruptcy filing. These transmittals occurred well in advance of the last date to object to the discharge or to the dischargeability of a debt in the debtor's case.

## DISCUSSION

■ In a community property state, such as Wisconsin, a discharge operates as an injunction against actions by a creditor to recover community property of the debtor acquired after the commencement of the case on account of a community claim, unless the action is to collect a community claim that is excepted from the debtor's discharge, or that would be excepted in a hypothetical case concerning the debtor's spouse, if the spouse had filed a case when the debtor's case was filed, and the provisions relating to objections to the discharge of the spouse's debt are met. 11 U.S.C. § 524(a)(3).[2] Community claims are defined as claims that arose prepetition concerning the debtor for which property specified in § 541(a)(2), i.e., most community property, is liable, whether or not such property actually exists. 11 U.S.C. § 101(7). The claim the Jolliffs have against the debtor's former husband meets this definition because at the time of the

debtor's bankruptcy, there could have been some form of community property owned by the Schmiedels—either parties' accumulated wages, for example—that could have been recovered to satisfy the claim against him.[3] Thus, a discharge received by one debtor/spouse shields after-acquired community property from the claims of all community creditors, even one such as the Joliffs' claim arising from an act or omission by the debtor's spouse. 11 U.S.C. § 524(a)(3); *In re Strickland,* 153 B.R. 909 (Bankr.D.N.M.1993).

All creditors having community claims are entitled to notice of the filing of the debtor's bankruptcy case. 11 U.S.C. § 342(a). Although the creditor is entitled to the name, address, and taxpayer identification number (social security number) of the debtor, the statute makes no mention of such information with respect to the debtor's spouse. Furthermore, failure to provide this information with respect to the debtor does not effect the legal validity of the notice. 11 U.S.C. § 342(c). The Jolliffs were listed on the debtor's schedules and received notice of her bankruptcy.

■ If a creditor has a claim against the nonfiling spouse that might have been excepted from the discharge if the nonfiling spouse were a debtor in bankruptcy, it is the duty of scheduled creditors to object to the hypothetical discharge of the nondebtor spouse, within the time limits set by the bankruptcy code. *In re Costanza,* 151 B.R. 588, 589 (Bankr.D.N.M.1993); *In re*

---

**2.** A discharge in a case under this title—

. . .

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning

the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a)(3).

**3.** Any kind of claim under Wis.Stat. § 766.55(2) that the Jolliffs had against Donald Schmiedel while he and the debtor were married is a community claim. *See* Christiansen, Haberman, Haydon, Kinnamon, McGarity, and Wilcox, Marital Property Law In Wisconsin, § 6.32c(3); *see also In re Pfalzgraf,* 236 B.R. 390 (Bankr.E.D.Wis.1999).

*Karber*, 25 B.R. 9, 12 (Bankr.N.D.Tex. 1982). Otherwise, creditors of either spouse are barred from recovering after-acquired community property of the debtor and the nondebtor spouse. 11 U.S.C. § 524(a)(3). The plaintiffs filed no proceeding to object to Mr. Schmiedel's hypothetical discharge.

■ The Jolliffs assert that they did not receive proper notice that Mr. Schmiedel was the debtor's husband because she did not identify him as her husband in her bankruptcy petition or schedules. The debtor counters that the Jolliffs had actual notice of the fact that Donald Schmiedel was her nonfiling spouse. Both parties cite *In re Sweitzer*, 111 B.R. 792 (Bankr. W.D.Wis.1990), as support for their positions.

In *Sweitzer*, the bankruptcy court discussed at length the notice requirements when the discharge of the debtor protects the after-acquired property of a non-debtor third party, the debtor's spouse. The court concluded:

> In order for creditors of a nondebtor spouse domiciled in a community property state to receive notice from the bankruptcy court equivalent to that provided to the creditors of the debtor spouse, the title of the debtor spouse's bankruptcy petition would have to contain the name, social security number and employer's tax identification number of the nondebtor spouse and all other names used by the nondebtor spouse within six years before filing the petition, together with the designation that the person so named was the "Nondebtor Spouse." Without such information a creditor faces the enormous burden of first, ascertaining that it has no claim against the debtor named on the petition, second, attempting to ascertain the name of the named debtor's nondebtor spouse, if any, third, ascertaining whether it has a claim against the nondebtor spouse, and/or grounds to object to the nondebtor spouse's discharge or to the discharge of the nondebtor spouse's debt

to the creditor, and, if so, fourth, filing its proof of claim and/or complaint objecting to discharge, all within the stringent time requirements of the Bankruptcy Rules.

*Sweitzer*, 111 B.R. at 798–99. In the Eastern District of Wisconsin, Local Bankruptcy Rules 5.01–.05 require such disclosures for the precise reasons stated in *Sweitzer*.

In this case, Ms. Schmiedel concedes she did not identify her estranged husband as a nonfiling spouse on her bankruptcy petition. Likewise, the notice of filing and the meeting of creditors, which the Jolliffs and their attorney received, did not refer to Mr. Schmiedel as a nonfiling spouse of the debtor. Nevertheless, review of the record of the parties' dispute and Ms. Schmiedel's bankruptcy schedules shows that the Jolliffs received all of the notice *Sweitzer* requires, and then some. The Jolliffs had sued the debtor as well as her husband, so they knew who she was (and how she was related to Donald) long before they got notice of a bankruptcy with only her name on it. The state court judge dismissed the debtor in the very case Donald was a defendant in—another reminder of their relationship—on April 5, 1994, well in advance of the bar date for filing nondischargeability complaints on June 20, 1994. A review of the schedules would have disclosed that the debtor listed her interest in the homestead on Schedule A in the nature of "land contract vendee with estranged husband." The debtor listed the Jolliffs, as well as their attorney, on Schedule F, Creditors Holding Unsecured Nonpriority Claims, as having a $100,000 construction claim for negligent construction. Furthermore, the debtor listed three lawsuits on her Statement of Financial Affairs, including "Nancy Moorehouse and David Joliff vs. Don Schmeidel [sic] and Michelle Schmiedel[,] 94 CV 151 BR 2[,] collection/breach of contract[,] Winnebago County[,] pending[.]" Thus, given the history of the parties' lawsuit, the notices they did receive, and the correspondence between counsel, the Jolliffs cannot credibly con-

tend that they were not aware of the identity of the debtor and her relationship to Donald Schmiedel. Notwithstanding technical noncompliance with the Local Bankruptcy Rules, the Jolliffs received sufficient and timely notice that Mr. Schmiedel was the nonfiling spouse of Ms. Schmiedel.

■ The injunction under § 524(a)(1) and (2) prevents creditors from attempting to establish or to collect on account of personal liability of a debtor for prepetition dischargeable debts, and the Jolliffs have not attempted to violate these prohibitions. Section 524(a)(3) protects after-acquired community property from recovery for community claims incurred by either spouse, but it is not a discharge of personal liability for the nonfiling spouse. As one court has put it: " '[T]he Devil himself could effectively receive a discharge in bankruptcy if he were married to Snow White.' ... To this I would add: if he does not treat her better than his creditors, she will, by divorcing him, deny his discharge." *Costanza*, 151 B.R. at 590 (quoting Alan Pedlar, *Community Property and the Bankruptcy Act of 1978*, 11 St. Mary's L.J. 349, 382 (1979)).

The Jolliffs were free to pursue Donald Schmiedel's personal liability when they did, following the debtor's discharge. Even while the Schmiedels were still married, the Jolliffs could have pursued Donald's separate property. *Strickland*, 153 B.R. 909. Now that the Schmiedels are divorced, none of his property is community property with the debtor, and the Jolliffs are free to recover any property from him they can.[4]

■ The difficulty in this case resides in the fact that the asset the Jolliffs are trying to recover from was owned by the debtor and her former spouse *before* the bankruptcy. The discharge injunction covers after-acquired community property, but the statute makes no mention of community property that was owned before the bankruptcy and passes through the bankruptcy estate as exempt property. This is apparently because, with certain exceptions peculiar to various state laws, all community property is included in the debtor's estate. Any nonexempt community property would be liquidated and distributed, and all that passes out of the estate is exempt community property. Exempt property, with exceptions not applicable here, is not available for recovery for discharged debts. 11 U.S.C. § 522(c). Certain liens, even on exempt property, pass through the bankruptcy, but the Jolliffs' lien did not arise until after the bankruptcy was over, even though it was for a prepetition community claim.

The interaction of §§ 522(c) and 524(a)(3) protects the entire value of a community property homestead claimed exempt that passes through a bankruptcy. The exempt portion cannot be reached after the bankruptcy, as this is prohibited by § 522(c). If the value of the house increased after bankruptcy because of market conditions or because the debtor reduced the outstanding mortgage, this increase in value could be considered after-acquired community property protected by the discharge under § 524(a)(3).

■ In this case, any current equity in the debtor's house in excess of her homestead exemption accrued postpetition. According to the bankruptcy schedules, no value in the homestead was claimed exempt, although the house itself is listed on the exemption schedule, because the first mortgage exceeded the value of the property. What is not clear is whether the debtor showed the value of her one-half interest in the house or the entire value that was in the estate; however, even if the house was worth twice what is shown, deduction of the first mortgage would leave only $14,000 in equity. When the debtor filed, the federal homestead exemp-

---

4. Of course, he may be generating community property with a new spouse, but rules concerning the recovery of community property for debts that arose before a current marriage need not concern us here.

tion was only $7,500. Had it been necessary, there is no apparent reason why she could not amend the schedules to take the Wisconsin $40,000 exemption, thus protecting the entire value of the house. 11 U.S.C. § 522(b)(2)(A). Granted, the federal exemptions, claimed by the debtor and listed in section 522(d), refer only to "the debtor's aggregate interest" in property claimed, and she could only claim her interest as exempt. *See In re Page*, 171 B.R. 349 (Bankr.W.D.Wis.1994). The debtor's husband had an interest in the real estate when judgment was entered against him. Nevertheless, the Wisconsin homestead exemption appears to be sufficiently broad to cover the entire equity in the property. Wisconsin Statute § 815.20 grants an exemption of $40,000 which "extends to land owned by husband and wife jointly or in common or as marital property." If spouses live in the same household, the exemption may be divided between them, but these spouses did not. Michelle would be entitled to the entire exemption in the entire property, notwithstanding the fact that her estranged husband still had an ownership interest. He might even have had a homestead interest in his own right, if he moved because of marital discord, but that need not be decided. In the state judgment context, and in the bankruptcy context if she chose to claim it, Michelle would be entitled to an exemption covering the entire property from both execution and liens. Any apparent lien can be removed from the chain of title under the statutory procedure if it is not removed after demand. Wis.Stat. §§ 815.20(2) & 806.04. Therefore, it appears that the Jolliffs cannot properly maintain a lien under Wisconsin law.

■ Neither party raised the issue of whether the lien ever attached or had any efficacy under Wisconsin law because of the value of the house and the amount of the homestead exemption, so the court's analysis of the expansiveness of Wisconsin's homestead exemption is not necessarily determinative. Because there is

sufficient independent reason under bankruptcy law to avoid the Jolliffs' lien, reliance on amendment of the schedules and a declaratory action under state law is not necessary. The facts in *In re Stoneking*, 225 B.R. 690 (9th Cir. BAP 1998), are analogous to this case, and this court finds its reasoning persuasive. The *Stoneking* court addressed whether a lien that attached to community property that was subsequently awarded to the debtor upon divorce could be avoided under 11 U.S.C. § 522(f)(1). The lien was granted for attorney's fees of the debtor's former spouse, which were charged to the debtor, but the lien was on the entire community property asset. No distinction was made as to the spouses' interests. Subsequently, the house was awarded to the debtor. After that, the debtor filed his chapter 7 petition and moved to avoid the lien as impairing his homestead exemption. The court analyzed *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), and determined that the lien could be avoided. The question addressed was: "Can a debtor avoid a lien placed on a community property residence if the residence thereafter becomes debtor's separate property?" *Stoneking*, 225 B.R. at 692. The court also noted that the creation of the lien was a separate event from the creation of a new property interest in the debtor. Because the debtor had a community property interest in the homestead when the lien attached, and the judicial lien attached while the property was still community property, the debtor could avoid the "fixing" of the lien on his exempt property. The fact that the debtor's interest was later augmented to fee simple did not negate the fact that the lien had affixed to an interest of the debtor in the property when it attached. Also, it appears to be irrelevant that the lien had also affixed to the nondebtor spouse's interest in the same property at the same time. The entire lien was necessarily avoided to preserve the debtor's exempt asset.

 Both Wisconsin law and bankruptcy law treat community property as being owned entirely by both spouses. Wis.Stat. § 766.31(3). Community property is a unitary concept of ownership and debt satisfaction. When a spouse files a bankruptcy petition, all community property is in the estate, and debts are treated without regard to who incurred them. Only in rare instances is community property treated as if the spouses own fractional interests, such as arose in *Page*, 171 B.R. 349. For most debts in community property states, such as the Jolliffs' judgment lien and the *Stoneking* attorney's judicial lien, it does not matter which spouse incurred the debt—both spouses' interest in community property could be recovered to satisfy the debt. Similarly, upon the bankruptcy of a spouse, both spouses' interests in community property are protected, and this includes avoidance of a judicial lien. The Jolliffs' claim was prepetition, and it is only fortuitous that judgment came after the bankruptcy, as did the divorce. Had judgment been entered before the bankruptcy, this lien would have been avoidable, and the timing of the judgment and subsequent divorce of the debtor does not change that result.

 The debtor has asked for sanctions, including attorney's fees, against the Jolliffs for violating the discharge injunction in taking judgment which resulted in a cloud on the debtor's property. The Jolliffs were within their rights to do so. Under Wis.Stat. § 806.15(1), the judgment created a cloud on title to the debtor's homestead, which could have been remedied by the protections of Wis.Stat. § 815.20 and 11 U.S.C. § 522(f), but the complexities of the interplay between community property rules, state judgment lien statutes and bankruptcy law make their hesitancy to release their rights understandable. Sanctions will be denied.

Although the motion did not specifically mention 11 U.S.C. § 522(f)(1), the debtor's motion made clear that she wished to remove the Jolliffs' lien from her property.

Since she is entitled under the facts to do so, the lien will be avoided. A separate order will be entered accordingly.

This memorandum decision represents the court's findings of fact and conclusions of law under Fed.R.Bankr.P. 7052.

### CONCLUSION

For the reasons stated above, the debtor's motion for sanctions against David and Nancy Jolliff is denied. The Jolliffs' lien against the debtor's homestead property is avoided pursuant to 11 U.S.C. § 522(f)(1).