**In re Seth W. YERRINGTON, Debtor.**

**Luba YERRINGTON, Appellant,**

v.

**Seth YERRINGTON, Appellee.**

BAP Nos. AK–91–1584–JVAs, AK–91–1603–JVAs.

Bankruptcy No. A90–00789–DMD.

Adv. No. A90–00789–001.

United States Bankruptcy Appellate Panel Ninth Circuit.

Argued and Submitted on June 23, 1992.

Decided Sept. 4, 1992.

J. Mitchell Joyner, Anchorage, Alaska, for Luba Yerrington.

M. Gregory Oczkus, Anchorage, Alaska, for Seth W. Yerrington.

Before: JONES, VOLINN and ASHLAND, Bankruptcy Judges

JONES, Bankruptcy Judge:

The state divorce court dissolved a marriage relation giving the marital home to the husband and a judicial lien against the home to the wife. The husband filed for bankruptcy, and the bankruptcy court avoided the wife's judicial lien. The wife appeals.

## BACKGROUND

The Yerringtons, Seth and Luba, were married in 1977. Thereafter they built a residence on unimproved land already owned by Seth in Homer, Alaska ("the Homer residence," or "the Property"). Title was held by Seth.

Seth and Luba were divorced in 1990. A final decree was not entered until August 23, 1990, after the bankruptcy petition date. On July 16, 1990, the divorce court orally awarded the residence to Seth, stating:

> Secondly, the house and property—the Homer property should be awarded to the husband. This is marital property. He shall execute a note and deed of trust to secure said note in the amount $27,-500.00 payable one year from the date of the decree bearing interest from the date of the decree at the legal rate for judgment. He shall not further encumber nor sell the property or any interest in the property until such deed of trust is recorded.

Luba's attorney, fearing that this language did not protect Luba in the event of bankruptcy, asked the court to grant Luba an equitable interest in the property, whereup-

on the judge stated: "I'm granting her an equitable interest at this time in the property."

Seth never executed the note and deed of trust which were intended to protect Luba's interest in the Homer residence. On August 9, 1990, Seth filed his Chapter 7 bankruptcy petition. Seth listed the Homer residence and claimed a $54,000.00 statutory exemption, naming Luba as an unsecured creditor owed $27,500.00.

On August 23, 1990, the divorce court entered findings and conclusions prepared by Luba:

> The husband is awarded the house and furnishings located in Homer. The court finds that the plaintiff has an equitable ownership interest in this property and that the defendant shall pay to the plaintiff $27,500 for her portion of the equity. The terms of this payment shall be that the principal and interest is due one year from the date the decree is signed by the court. The note shall bear interest at a rate of 10.5% per annum. The plaintiff's ownership interest in the property shall not be considered terminated until full payment of $27,500 has been made.

Luba filed an adversary complaint objecting to the classification of her claim as unsecured and objecting to its discharge. The bankruptcy court found that the debt to Luba was a judicial lien avoidable pursuant to § 522(f)(1). Luba appeals. We REVERSE and REMAND.

## ISSUES AND STANDARDS OF REVIEW

■ Whether Luba's post-dissolution interest in the property was a judicial lien is a question of bankruptcy law which we review *de novo*. *E.g., In re Ehring*, 900 F.2d 184, 187 (9th Cir.1990). Whether Luba's judicial lien was avoidable pursuant to § 522(f)(1) is a question of bankruptcy law which we review *de novo*. *See In re Wade*, 115 B.R. 222, 225 (9th Cir.BAP 1990), *aff'd*, 948 F.2d 1122 (9th Cir.1991).

1. *In re N.S. Garrott & Sons*, 772 F.2d 462 (8th Cir.1985); *see also* 11 U.S.C. § 541(a).

2. *Klondike Indus. Corp. v. Gibson*, 741 P.2d 1161 (Alaska 1987) (court may impose equitable remedy such as a constructive trust).

## DISCUSSION

### 1. *Equitable Interest vs. Judicial Lien*

■ Luba argues that the divorce court granted her an "equitable ownership interest" in the property. Luba further argues that because property interests are determined by state law,[1] and because the divorce court made that determination,[2] the bankruptcy court should have given collateral estoppel effect to the divorce court determination.

Luba is arguing, in essence, that the divorce court granted her an ownership interest and not a judicial lien. However, the federal definition of "judicial lien" must control the determination of whether Luba's interest is a judicial lien for bankruptcy purposes, since the Code provides a definition. *See McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945); *Ehring*, 900 F.2d at 187. If state law were allowed to vary what would otherwise be a judicial lien by merely calling it an equitable ownership interest, havoc would result. *See Boyd v. Robinson*, 741 F.2d 1112, 1115 (8th Cir.1984) (Ross, J., dissenting), *majority opinion disapproved by Farrey v. Sanderfoot*, —— U.S. ——, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

Section 101(37) of the Bankruptcy Code[3] defines a lien as a "charge against or interest in property to secure payment of a debt or performance of an obligation." Section 101(36) defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." In the instant appeal, the state court granted Luba a lien against the house to secure performance of Seth's obligation to pay her $27,500.00. The bankruptcy court held:

> [Luba] had a "judicial lien" within the meaning of [§ 101(36)] as her interest

3. Unless otherwise indicated, all code citations refer to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1991).

was a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding. The purpose of her "equitable interest" was solely to secure payment of a $27,500.00 property settlement obligation.

Luba's lien fits precisely within the Code's definition of a "judicial lien." *See Boyd* dissent, 741 F.2d at 1115. The state court's dissolution decree gave the Property outright to Seth, subject to Luba's lien. Prior to the order, Luba had some interest in the Property determined by state law. At the time of the decree, this prior interest was extinguished and replaced by a debt of $27,500.00 enforceable by a judicial lien on the Property. *See id.*

2. *Timing of Seth's Interest*

■ In *Sanderfoot* the Supreme Court held:

[Section] 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest.

—— U.S. at ——, 111 S.Ct. at 1831.

In *Sanderfoot* a husband and wife had jointly acquired marital property during the marriage. Applying Wisconsin law, the *Sanderfoot* Court held that the dissolution decree simultaneously extinguished pre-dissolution interests and created new ones. Consequently, the *Sanderfoot* debtor could not be said to possess an interest to which a lien attached, before it attached, since his interest arose at the same time as his spouse's lien.

In the instant case Seth owned the property before his marriage to Luba. The bankruptcy court apparently believed that this fact distinguished the instant case from *Sanderfoot*.[4] We disagree.

The extent of Seth's interest in the Property when Luba's lien attached is a ques-

tion of state law. *See* at ——, 111 S.Ct. at 1830. The Alaska Supreme Court has held:

Where one spouse has made contributions to the marital community, whether of a pecuniary or of a more intangible nature, and where these contributions have benefitted in any manner the separate property of the other spouse acquired before the marriage, we believe that the trial court may determine that all or a portion of that property should be included with the property acquired after marriage in effecting a just and equitable division of property.

*Vanover v. Vanover,* 496 P.2d 644, 648 (Alaska 1972). In the instant case the state court held that the Homer residence was "marital" property and that Luba had an equitable interest therein. What the state court apparently meant was that Luba had a pre-dissolution interest in the Property's accumulated equity. *See Burgess v. Burgess,* 710 P.2d 417, 420 (Alaska 1985) (value of equity accumulated during marriage is a marital asset); *Wanberg v. Wanberg,* 664 P.2d 568 (Alaska 1983) (invasion of separate property of one spouse may be required as a matter of law when spouses have treated separate property as joint holdings during marriage).[5]

■ In summary, Alaska law provides that the divorce court has the power to reorder the pre-dissolution interests of the parties as required for an equitable result, even if this requires the court to invade the pre-marital property of one spouse for the benefit of the other. *Wanberg,* 664 P.2d at 572–73. This means that the divorce court could just as easily have awarded the Property to Luba and the judicial lien to Seth, instead of the other way around.[6] Thus, the dissolution decree destroyed the previous interests of the parties and created new ones, just as in *Sanderfoot* under Wis-

---

4. *Sanderfoot* was decided before the bankruptcy court entered its decision in the instant case.

5. The bankruptcy court found that "Mr. Yerrington agreed that his wife was entitled to some of the equity in the house that had developed over the course of the marriage."

6. "Since the Wisconsin Family Court had the power to strip the husband of his interest altogether, it can be reasoned that the court granted him the entire property on the condition that his prior interest would terminate and that a lien would attach to a new interest in the whole." —— U.S. at ——, 111 S.Ct. at 1832 (Kennedy, J., concurring).

consin law.[7] The fact that Seth had an interest in the property both before and after the dissolution decree is not determinative; Luba also had an interest which was transferred to Seth and against which the lien could unavoidably attach.

## CONCLUSION

Although we agree that Luba's post-dissolution interest must be defined as a judicial lien, we find that Seth did not possess an interest to which a lien attached, before it attached, under Alaska law as required by § 522(f)(1). Accordingly, we REVERSE and REMAND.

---

**7.** Even if Alaska law were different than Wisconsin law, the *Sanderfoot* decision is probably broad enough to cover it. *Sanderfoot* states that "[t]he same result follows even if the divorce decree did not extinguish the couple's pre-existing interest but instead merely reordered them." *Sanderfoot,* at ——, 111 S.Ct. at 1831.