In re Donald Wate CATLI, Debtor.

ESTATE OF Evelyn Eileen
CATLI, Appellant,

v.

Donald Wate CATLI, Appellee.

No. 91–35131.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 2, 1993.*

Decided July 26, 1993.

James F. Dart, Tacoma, WA, for appellee.

Ronald C. Templeton, Matty & Templeton, Silverdale, WA, for appellant.

Before: TANG, KOZINSKI, and FERNANDEZ, Circuit Judges.

TANG, Circuit Judge:

Pursuant to a divorce decree, Donald Wate Catli ("Mr. Catli") was awarded the family home, and Evelyn Eileen Catli ("Mrs. Catli") was awarded a lien against the home. Thereafter, Mr. Catli filed for bankruptcy and sought avoidance of Mrs. Catli's lien under 11 U.S.C. § 522(f)(1). In an unpub-

---

* The panel unanimously agrees that this case is appropriate for submission without oral argu-

ment. Fed.R.App.P. 34(a); 9th Cir.R. 34–4.

lished memorandum disposition, a Bankruptcy Appellate Panel ruled that Mrs. Catli's lien was a judicial lien subject to the avoidance provision of § 522(f)(1). Mrs. Catli appeals, arguing that her lien is not subject to avoidance under § 522(f)(1). We have jurisdiction under 28 U.S.C. § 158(d). We reverse.

## BACKGROUND

After sixteen years of marriage, Mr. and Mrs. Catli separated and commenced divorce proceedings in Clallam County, Washington. Pursuant to the dissolution decree dated June 24, 1983, it was

ORDERED, ADJUDGED AND DECREED that the community property will be divided as follows:

TO [MR. CATLI]:

... The family home ... which he shall be allowed to reside in and be required to maintain until January of 1986, at which time he will list the house for sale and upon sale both parties will divide the net proceeds from the sale....

TO [MRS. CATLI]:

... A lien against the family home for one half of the net proceeds received at the time of sale....

Instead of selling the home as ordered, Mr. Catli, on May 8, 1989, filed for bankruptcy under Chapter 7 of the Bankruptcy Code and claimed a homestead exemption in the family home under 11 U.S.C. § 522(d)(1).[1] Mr. Catli then moved pursuant to 11 U.S.C. § 522(f)(1) to avoid Mrs. Catli's lien on the family home as a judicial lien impairing his homestead exemption.

The bankruptcy court entered an order granting Mr. Catli's Motion for an Order Avoiding Lien on Exempt Property. Mrs. Catli appealed to the Bankruptcy Appellate Panel for the Ninth Circuit ("BAP"). The BAP affirmed. Evelyn Catli timely appeals.

## STANDARD OF REVIEW

We review de novo the decisions of the Bankruptcy Appellate Panel. *In re Dewalt*, 961 F.2d 848, 850 (9th Cir.1992). We also review the bankruptcy court's conclusions of law de novo and review for clear error its findings of fact. *Id.*

## DISCUSSION

### I.

Under 11 U.S.C. § 522(f)(1):

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien....

Thus, under § 522(f)(1), a debtor may avoid a lien if three conditions are met: (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien. *In re Stone*, 119 B.R. 222, 226 (Bankr. E.D.Wash.1990). The debtor has the burden of demonstrating that he is entitled to avoid a judicial lien under § 522(f)(1). *See In re Butler*, 5 B.R. 360, 361 (Bankr.D.Md.1980).

Under *In re Pederson*, 875 F.2d 781, 782 (9th Cir.1989), *disapproved on other grounds*, *Farrey v. Sanderfoot*, ── U.S. ──, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), we hold clearly that Mrs. Catli's lien is a judicial lien, and the parties do not raise the issue of whether Mrs. Catli's lien impairs Mr. Catli's homestead exemption. The only issue we decide is whether there was a fixing of a lien on an interest of Mr. Catli.

### II.

In *Farrey v. Sanderfoot*, ── U.S. ──, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), the Supreme Court addressed the issue of whether § 522(f)(1) permits a debtor spouse

---

1. Under § 522(d)(1):

The following property may be exempted under subsection (b)(1) of this section:

(1) The debtor's aggregate interest, not to exceed $7,500 in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence....

to avoid a creditor spouse's lien against a property interest obtained by the debtor spouse pursuant to a divorce decree.[2]

In *Sanderfoot,* Gerald Sanderfoot and Jeanne Farrey, formerly husband and wife, obtained a divorce judgment from a Wisconsin court. Pursuant to the divorce decree, the marital estate was divided equally. Sanderfoot received sole title to the family house and to most of the personal property. As for Farrey, she received the remaining personal property and the proceeds from the court-ordered sale of the household furniture. Under this preliminary calculation, Sanderfoot was to receive a net award of $59,508.79, whereas Farrey stood to receive a net award of $1,091.90. To equalize the division of property, the court ordered Sanderfoot to pay Farrey $29,208.44. To secure the payment, the divorce decree stated that Farrey "shall have a lien against the real property of [Sanderfoot] for the total amount of money due [Farrey] pursuant to this Order of the Court, i.e. $29,208.44, and the lien shall remain attached to the real estate property ... until the total amount of money is paid in full." *Id.* at ——, 111 S.Ct. at 1827 (quotation omitted).

Rather than making any payment or complying with any state court order, Sanderfoot voluntarily filed for Chapter 7 bankruptcy and listed the family home as exempt homestead property. Thereafter, Sanderfoot filed a motion to avoid Farrey's $29,208.44 lien under 11 U.S.C. § 522(f)(1) as a judicial lien impairing his right to a homestead exemption. A divided panel of the Seventh Circuit held that the lien was avoidable; the Supreme Court reversed. *Sanderfoot,* —— U.S. at ——, 111 S.Ct. at 1828.

In reversing, the Court examined § 522(f)(1) and stated:

> No one asserts that the two verbs underlying the provision possess anything other than their standard legal meaning: "avoid" meaning "annul" or "undo," and "fix"

meaning to "fasten a liability upon." The statute does not say that the debtor may undo a lien on an interest in property. Rather, the statute expressly states that the debtor may avoid "the fixing" of a lien on the debtor's interest in property. The gerund "fixing" refers to a temporal event. That event—the fastening of a liability—presupposes an object onto which the liability can fasten. The statute defines this pre-existing object as "an interest of the debtor in property." Therefore, unless the debtor had the property interest to which the lien attached at some point *before* the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1).

> This reading fully comports with the provision's purpose and history.

*Id.* at ——, 111 S.Ct. at 1829 (citations and footnote omitted).

The Court then held that "§ 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, *before it attached,* to avoid the fixing of the lien on that interest." *Id.* at ——, 111 S.Ct. at 1831 (emphasis added). In applying this holding, the Court concluded that "[s]ince Sanderfoot never possessed his new fee simple interest before the lien 'fixed', § 522(f)(1) is not available to void the lien." *Id.*

The Supreme Court thus essentially overruled our decision in *Pederson.*[3] In *Pederson,* we rejected the theory that "Congress intended that section 522(f) only apply when the lien was imposed on property in which the debtor had a pre-existing interest," 875 F.2d at 783 n. 4, and held that the debtor spouse in that instance could avoid the creditor spouse's lien, *id.* at 784.

■ The BAP in this appeal did not have the guidance of *Sanderfoot,* and therefore rendered its decision based on our decision in

**2.** "Debtor spouse" is the spouse who, pursuant to a divorce decree, received property subject to a lien and who is trying to avoid the lien by subsequently filing for bankruptcy. The "creditor spouse" is the spouse who received the lien.

**3.** The *Sanderfoot* decision, however, has not overruled our holding in *Pederson* that a lien imposed by a court in a divorce proceeding is a judicial lien. *See Sanderfoot,* —— U.S. at ——, 111 S.Ct. at 1828 (the Court explicitly declined to address the issue of whether the lien was a judicial lien).

*Pederson.* We now hold, in light of *Sanderfoot,* that the critical issue in determining whether a debtor may avoid a lien under § 522(f)(1) is whether the debtor "ever possessed the interest to which the lien fixed, before it fixed." —— U.S. at ——, 111 S.Ct. at 1830. If not, the debtor may not avail himself or herself of § 522(f)(1) to avoid the fixing of the lien. *Id.*

### III.

Whether Mr. Catli possessed an interest in the family home *before* Mrs. Catli's lien fixed is a question of state law. *See Sanderfoot,* —— U.S. at ——, 111 S.Ct. at 1830 (emphasis added). Under Washington law, each spouse owns an undivided one-half interest in community property. *deElche v. Jacobsen,* 95 Wash.2d 237, 622 P.2d 835, 838–39 (1980). When a marriage is dissolved, a court in a divorce proceeding must dispose of the couples' community and separate property. Wash.Rev.Code § 26.09.080 (1989).[4] In disposing of the property, the divorce court may award one spouse the property outright subject to a lien awarded to the other spouse. *See Brossman v. Brossman,* 32 Wash.App. 851, 650 P.2d 246, 248 (1982), *review denied,* 98 Wash.2d 1017 (1983).

Here, the state court disposed of Mr. and Mrs. Catli's property by awarding Mr. Catli sole title to the family home subject to a lien awarded to Mrs. Catli for one-half the net proceeds of the house when sold; the divorce decree did not in any way purport to encumber any part of Mr. Catli's previous undivided one-half interest. Whatever the nature of Mr. Catli's interest in the home as a result of the divorce decree it was not an interest that existed prior to the decree. Mr. Catli thus never possessed an interest to which Mrs. Catli's lien attached, *before* it attached, and § 522(f)(1) does not apply.

Our decision is consistent with the language and purpose of § 522(f)(1). Section 522(f)(1) does not concern itself with liens affixed on a debtor's interest before the debtor acquired that interest. *Sanderfoot,* —— U.S. at ——, 111 S.Ct. at 1830. Rather, "the legislative history suggests that Congress primarily intended § 522(f)(1) as a device to thwart creditors who, sensing an impending bankruptcy, rush to court to obtain a judgment to defeat the debtor's exemptions. That is not what occurs in a divorce proceeding such as this." *Id.* at ——, 111 S.Ct. at 1831, *see also* Darilyn T. Olidge, Note, *Divorce Liens Under Section 522(f) of the Federal Bankruptcy Code: Resolving Tensions Between Family and Bankruptcy Law,* 67 N.Y.U.L.Rev. 879, 883 (1992) ("there is no evidence that Congress envisioned [§ 522(f)(1)] to be applied to divorce lienholders").

The lien in this instance was not an attempt to thwart Mr. Catli's homestead exemption. Instead, as in *Sanderfoot,* Mrs. Catli "obtained the lien not to defeat [Mr. Catli's] pre-existing interest in the homestead but to protect her own pre-existing interest in the homestead that was fully equal to that of her spouse." —— U.S. at ——, 111 S.Ct. at 1831. It therefore follows that "to permit a debtor in these circumstances to use the Code to deprive a spouse of this protection would neither follow the language of the statute nor serve the main goal it was designed to address." *Id.*

Thus, in light of the Supreme Court's decision in *Sanderfoot,* we overrule our prior decision in *In re Pederson,* and hold that in a divorce setting as this, Mr. Catli may not avail himself of § 522(f)(1) to avoid Mrs. Catli's lien.[5]

REVERSED.

---

4. Under Wash.Rev.Code § 26.09.080:

> In a proceeding for dissolution of the marriage ... the court shall ... make such disposition of the property and the liabilities of the parties,

either community or separate, as shall appear just and equitable....

5. Although we must ordinarily adhere to Ninth Circuit precedent, we "may reexamine that precedent without the convening of an *en banc* pan-

el" where our precedent has been nullified by a subsequent Supreme Court decision. *LeVick v.*

*Skaggs Co., Inc.*, 701 F.2d 777, 778 (9th Cir. 1983).