**In re Pierre T. BARNES and Kathy L. Barnes, Debtors.**

**Melinda K. NELSON, Appellant,**

**v.**

**Pierre T. BARNES and Kathy L. Barnes, Appellees.**

BAP No. CC–95–1845–MeJHa.

Bankruptcy No. ND 94–13753 RR.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted March 20, 1996.

Decided July 19, 1996.

**780**

James G. Allen, Thousand Oaks, CA, Diane Pappas, Thousand Oaks, CA, for Appellant.

Kenneth B. Rodman, Westlake Village, CA, for Appellees.

Before: MEYERS, JONES and HAGAN, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge:

### I

Melinda K. Nelson ("Nelson") appeals an order allowing her former husband, Pierre T. Barnes ("Debtor"), to avoid her judgment liens. We affirm in part and reverse in part.

### II

### FACTS

The marriage between Nelson and the Debtor was dissolved pursuant to a judgment of the Ventura County Superior Court. In a "Judgment on Reserved Issues" entered on November 6, 1990, the superior court ordered, among other things, that the Debtor pay the Appellant a total of $21,900. Specifically, the Debtor was to reimburse Nelson $17,000 for the value of their business, $200 for an eight-foot boat and $5,000 for a car, while Nelson was to reimburse the Debtor $300 for a six-foot boat. In addition, the court directed that either party could buy the other's interest in the house. Otherwise, the house would be sold, with profits divided between the parties. The court reserved jurisdiction over any disputes which might arise concerning division of the house.

Both parties indicated their wish to keep the residence. The superior court had ordered that either party could buy it for $240,-000. As both Nelson and the Debtor wanted to purchase the residence at that price, they bid for the property. The parties stipulated that the Debtor would buy the residence for $270,000. The superior court orally approved the stipulation on April 8, 1991. Nelson executed a quitclaim deed in the residence in favor of the Debtor on July 26, 1991, which the Debtor recorded four days later. On September 23, 1991, Nelson recorded a notice of pending action which stated that the pending dissolution proceeding affected the residence, as one of the objects of the proceeding was to establish a lien against the residence.

On April 8, 1993, Nelson recorded the Judgment on Reserved Issues in Ventura County, along with two other orders from the

Ventura County Superior Court. The first order, dated June 17, 1991, directed the Debtor to pay $1,000 to Nelson's counsel. The second order, dated December 9, 1991, awarded Nelson $8,493.88 to reimburse her for "one-half of the community obligations" she had paid since the court's November 8, 1989 order. Specifically, Nelson was allowed reimbursement for one-half of the property taxes and penalties she had paid on the residence, one-half of the community obligations she had assumed in November 1989 and uninsured medical and dental expenses from November 1989.

The Debtor and his current wife filed a Chapter 7 bankruptcy petition on September 2, 1994. On June 1, 1995, they filed a motion to avoid Nelson's judicial liens. The court granted the motion by order entered on July 24, 1995 and this appeal followed.

On October 20, 1995, the bankruptcy court entered a judgment finding a $21,000 debt owed to Nelson nondischargeable under Bankruptcy Code ("Code") Section 523(a)(2)(A), on the basis that when the Debtor caused the quitclaim deed to be recorded he did not intend to pay Nelson the monies due her.

## III

### STANDARD OF REVIEW

Questions of statutory interpretation are reviewed de novo. In re Morgan, 149 B.R. 147, 150 (9th Cir. BAP 1993). Whether a post-dissolution interest in property is a judicial lien, and whether a judicial lien is avoidable under Code Section 522(f)(1), are questions of law reviewed de novo. In re Yerrington, 144 B.R. 96, 98 (9th Cir. BAP 1992), aff'd without op., 19 F.3d 32, 1994 WL 68254 (9th Cir.1994).

## IV

### DISCUSSION

Because this case was filed before October 22, 1994, the date the 1994 Bankruptcy Reform Act went into effect, the 1994 amendments to Code Section 522(f) do not apply. See In re Amiri, 184 B.R. 60, 61 n. 3 (9th Cir. BAP 1995); In re Wilson, 90 F.3d

347 (9th Cir.1996). The former version of Section 522(f)(1) provides:

Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is a judicial lien.

The debtor has the burden of showing he is entitled to avoid a judicial lien under Section 522(f)(1). In re Catli, 999 F.2d 1405, 1406 (9th Cir.1993).

### A. Whether Nelson Has Judicial Liens

Nelson sets forth several arguments why Section 522(f)(1) does not apply here. First, she contends that her liens are not judicial liens. Rather, she claims they are in the nature of a security interest voluntarily undertaken by the Debtor pursuant to an agreement entered into in the dissolution proceeding.

This argument has been rejected by the Ninth Circuit Court of Appeals. In In re Pederson, 875 F.2d 781, 783 n. 4 (9th Cir. 1989), the court stated:

Other courts have held that a lien created in a settlement agreement is equivalent to a consensual security interest, rather than a judicial lien, for purposes of section 522(f)(1). We reject these theories as implausible and unsupported by the language of the Code.

(Citation omitted.) Although Farrey v. Sanderfoot, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), abrogated the central holding in Pederson, the Court of Appeals has concluded that Sanderfoot "has not overruled our holding in Pederson that a lien imposed by a court in a divorce proceeding is a judicial lien." Catli, supra, 999 F.2d at 1407 n. 3.

### B. Whether the Liens Are Against the Debtor's Property Interest

Nelson also asserts that the liens are not against the interest of the Debtor in the property, because the Debtor breached the agreement allowing him to acquire the property. Nelson points to the bankruptcy court's finding on the Section 523(a)(2) action

that when the Debtor caused the quitclaim deed to be recorded he did not intend to pay Nelson the monies due her. But the court's holding that the *debt* was incurred fraudulently does not mean that the *deed* lacked validity. Nelson's objection to the legality of the Debtor's title could have been pursued in a separate proceeding. This apparently was not done. There is no indication that the Debtor does not hold valid title to the residence and thereby lacks an interest in the property. Nelson's argument on this point lacks merit.[1]

■ The bankruptcy court held that the liens, because they were recorded after the quitclaim deed had been recorded, fixed after the Debtor obtained his property interest in the residence. Applying *Sanderfoot, supra,* the court held that Nelson's liens were avoidable. We believe the court's analysis of the issue was in error.

In *Sanderfoot,* like the instant case, the debtor attempted to avoid liens held by his former wife in connection with the dissolution of their marriage. The Supreme Court summarized its ruling as follows: "We hold that § 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest." 500 U.S. at 301, 111 S.Ct. at 1831. The Court stated that whether a debtor ever possessed an interest to which the lien fixed, before it fixed, is a question of state law. 500 U.S. at 299, 111 S.Ct. at 1830. In *Sanderfoot,* the debtor had conceded that the dissolution judgment created a new property interest. *Id.* The Supreme Court held that because the lien fixed at the same time the new property interest was created, the debtor could not avoid the fixing of the lien under Section 522(f)(1). *Id.*

■ Here, the Debtor has not made any similar concessions. Under *Sanderfoot,* we look to state law to determine when property interests are created. In *Yerrington, supra,* we applied Alaska law to the principles stat-

ed in *Sanderfoot.* We noted that Alaska law gave the divorce court the authority to reorder pre-dissolution interests of the parties as required for an equitable result. 144 B.R. at 99. Consequently, the dissolution decree destroyed the previous interests of the parties and created new ones. *Id.*

In *Catli, supra,* the Court of Appeals looked at Washington law to determine whether the debtor possessed an interest in the family home before his former spouse's lien fixed. The court found the following elements of that law important: each spouse owns an undivided one-half interest in community property; when a marriage is dissolved, a court in a divorce proceeding must dispose of the couple's community and separate property; and in disposing of the property, the court may award one spouse the property outright subject to a lien awarded to the other spouse. 999 F.2d at 1408. This is what the state court had done. The Court of Appeals held that the debtor never possessed an interest to which his former wife's lien attached, before it attached, making Section 522(f)(1) inapplicable. *Id.*

California's provisions for division of property in marital dissolution actions are similar to those found relevant in *Yerrington* and *Catli.* In California, in a marriage dissolution proceeding, the court has jurisdiction to issue orders concerning the settlement of property rights of the parties. Cal.Fam. Code Sec. 2010(e). The court is to divide the community estate of the parties equally, either in its judgment of dissolution or at a later time if it expressly reserves jurisdiction to make such a property division. Cal.Fam. Code Sec. 2550. Division of the property may include an award of a community asset to one party, in order to effect a substantially equal division of the community estate. Cal. Fam.Code Sec. 2601.[2]

In sum, in California, property rights are reordered by the court in dissolution proceedings—either at the time the dissolution judgment is entered or when the court later

---

1. Given the bankruptcy court's finding that the Debtor defrauded Nelson, she might have other remedies available to her.

2. The Family Code sections referenced above became effective on January 1, 1994. They restate the law, without substantive change, found in former Civil Code Sections 4800(a), 4800(b)(1) and 4351.

divides the property under its continuing jurisdiction. In this case, the court reserved jurisdiction to divide the community estate. It did not divide the interests in the residence until after the dissolution judgment was entered. The superior court gave the Debtor a new property interest in the house.

■ The next question is when or if the liens fixed on the Debtor's newly created property interest. The bankruptcy court looked to the state law definition of lien attachment to determine when Nelson's liens fixed, relative to the creation of the Debtor's new property interest in the residence. Under Cal.Civ.Proc.Code Secs. 697.310(a) and 697.340(a), judgment liens attach to property in the county in which they are recorded at the time they are recorded. Nelson recorded her liens in 1993, approximately two years after the superior court approved the parties' agreement to sell the residence to the Debtor. Under California law, Nelson's liens fixed after the creation of the Debtor's new property interest in the residence. The court held that under *Sanderfoot*, Nelson's liens were avoidable because they fixed to the property after the Debtor's interest in the property changed.

The court erred in using the California law definition of lien attachment instead of the definition of the "fixing" of a lien set forth in *Sanderfoot*. Although the Supreme Court looked to state law to determine when a property interest was created, it did not reference state law in deciding when a lien fixed. The Court looked at the "standard legal meaning" of "fix," as stated in Black's Law Dictionary: "to fasten a liability upon." 500 U.S. at 296, 111 S.Ct. at 1829.

If a lien is not considered "fixed" until it is recorded, then a lien created in a divorce

decree which divides community property would always be avoidable in California, as the lien would always arise after the creation of new property interests. We do not think this was the result intended in *Sanderfoot*. The court in *In re Wells*, 139 B.R. 255, 257 (Bankr.D.N.M.1992), likewise rejected the argument that a lien could come into existence only when a judgment was recorded. The court found that this argument might hold in a lien dispute between third parties, but not between former spouses awarded monetary judgments and new property interests in dissolution proceedings. *Id.*

■ The more reasonable view is that a lien is created in dissolution proceedings when the court completes its division of the community property.[3] The granting of a money judgment is simply another way to divide the property. Money awarded to a party will be considered part of the division of assets. At the time all the community property is divided, money judgments awarded in the proceedings for the purpose of dividing property will attach to any existing property interests.

The lien evidencing the November, 1990 Judgment on Reserved Issues should not have been avoided, since the judgment reflected compensation to Nelson for the division of community property. As such, it came into being at the time the Debtor's property interest in the house was reordered. The December 9, 1991 order also was entered in the effort to divide the community property. The liens evidencing these two judgments were created simultaneously with the acquisition of the Debtor's new property interest in the residence. Because they did not fix on the Debtor's reordered property interest, they are not avoidable.

3. One commentator asserts that applying a "pure timing analysis" of *Sanderfoot* would make avoidance of liens dependent on the precise moment the state court divided each piece of property. Suzanne E. Doherty, *The Interplay between Bankruptcy and Divorce: which Former Spouse Deserves the Fresh Start?*, 99 Comm.L.J. 192, 211–12 (1994). Doherty contends that if a paragraph in a dissolution decree dividing certain property precedes a paragraph awarding a lien on the property, the lien is avoidable. Yet if the paragraph dividing the property follows the paragraph awarding the lien, the lien is not avoidable.

This "pure timing analysis" takes *Sanderfoot* to an absurd extreme, to a point the Supreme Court refused to go. No court could ever *simultaneously* state both that a property would be awarded to one spouse and that the other spouse would have a lien. One of the statements would have to follow the other. The Court in *Sanderfoot* did not ask which statement was first uttered or written by the state court. It simply ruled that the dissolution decree "simultaneously" transferred a property interest to the debtor while granting a lien to the debtor's former spouse. 500 U.S. at 300, 111 S.Ct. at 1830–31.

■ As to the June 1991 sanction order, it apparently was an attempt to compensate Nelson for money she had spent due to the Debtor's lack of cooperation in the dissolution proceedings. Although the order was issued by the superior court, it was not issued in an attempt to divide the community assets. The court did not mean to "fasten a liability on" the Debtor's property at the time it issued the sanctions order. The lien was not created until Nelson recorded it in 1993, after all the property had been divided. It is avoidable.

C. *Whether the Debtor is Entitled to an Exemption*

■ Nelson also maintains that the Debtor is not entitled to an exemption which the lien would impair. A creditor may challenge a claim of exemption in the context of defending a lien avoidance motion. *In re Morgan,* 149 B.R. 147, 153 (9th Cir. BAP 1993). Nelson asserts that she retains an ownership interest in the property until her interest is bought out, as directed by the state court. Nothing in the record indicates that the superior court so limited the Debtor's interest in the residence.[4] The quitclaim deed Nelson signed belies her claim that she retained an interest in the property. The Panel rejects Nelson's objection to the Debtor's exemption claim.

## V

### CONCLUSION

The Debtor's new property interest in the house was created at the same time the November 1990 and December 1991 judgments came into being. Therefore, the liens evidencing these judgments did not fix onto the Debtor's reordered property interest and Section 522(f)(1) is inapplicable. We **REVERSE** the bankruptcy court's holding that these liens are avoidable.

The June 1991 sanctions order was not directed at dividing the community property.

Therefore it did not attain lien status until Nelson recorded it, subsequent to the division of the community property. It fixed on the Debtor's newly acquired interest in the house and thus was avoidable in bankruptcy. We **AFFIRM** this part of the bankruptcy court's order.

4. Therefore, this case is distinguishable from *In re Keller,* 185 B.R. 796 (9th Cir. BAP1995). In *Keller,* the family law court had directed that proceeds from the sale of the home formerly owned by the debtor and his ex-wife be held in trust, with the court retaining jurisdiction to approve disbursement of the proceeds. We held that the debtor's ownership interest in the proceeds was limited for purposes of determining whether there was a transfer of estate property under Bankruptcy Code Section 547.