In re Mark G. STONEKING dba
MDS & Co., Debtor.

The LAW OFFICES OF MOORE
& MOORE, Appellant,

v.

Mark G. STONEKING, Appellee.

BAP No. SC–97–1923–MORO.
Bankruptcy No. 97–01068–B7.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted May 20, 1998.

Decided Sept. 24, 1998.

George C. Lazar, Fox, Johns, Lazar, Pekin
& Treadgold, San Diego, CA, for The Law
Offices of Moore & Moore.

Michael Sachs, San Diego, CA, for Mark
G. Stoneking.

Before: MONTALI,[1] RUSSELL, and
OLLASON, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

On appeal a creditor asks the panel to
uphold its judicial lien despite the debtor's
challenge under 11 U.S.C. § 522(f)(1).[2] To
do so would require us to extend the United
States Supreme Court decision in *Farrey v.
Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114
L.Ed.2d 337 (1991) beyond its stated limits.[3]
We will not do that, and thus will AFFIRM
the bankruptcy court's decision to avoid the
judicial lien that impaired the debtor's ex-
emption.

## I.

### FACTS

Appellant, the Law Offices of Moore &
Moore ("Creditor") represented the former

[1]  Hon. Dennis Montali, Bankruptcy Judge for the
Northern District of California, sitting by desig-
nation.

[2]  Unless otherwise indicated, all section and rule
references are to the Bankruptcy Code, 11 U.S.C.
§§ 101–1330 and the Federal Rules of Bankrupt-
cy Procedure, Rules 1001–9036.

[3]  In the opening paragraph of the decision, the
Supreme Court stated the issue before it:

In this case we consider whether § 522(f) of
the Bankruptcy Code allows a debtor to avoid
the fixing of a lien on a homestead, *where the
lien is granted to the debtor's former spouse*
under a divorce decree that extinguishes all
previous interests the parties had in the prop-
erty, and in no event secures more than the
value of the non-debtor spouse's former inter-
est. *Farrey,* 500 U.S. at 292, 111 S.Ct. 1825
(emphasis added).

wife of appellee and debtor Mark G. Stoneking ("Debtor") in state court divorce proceedings. On or about November 26, 1996, Creditor obtained an order for recovery of its fees against Debtor and against the community property of Debtor and Rhonda Stoneking, Debtor's former spouse ("Former Spouse"). The Superior Court of California, County of San Diego ("Superior Court") found and ordered that:

1) As of Sept. 30, 1996, [Former Spouse] has incurred and owes $14,615.53 in attorneys fees and costs to [Creditor] for her representation in the dissolution proceedings which includes the previous court ordered $3,000 to be paid by [Debtor].

2) [Creditor] has properly filed a Borson[4] motion against [Debtor] and the community property owned by [Debtor and Former Spouse].

3) The Court orders a judicial lien in the amount of $14,615.53 for [Creditor] against [Debtor] and the community property owned by [Debtor and Former Spouse]. The lien is specifically but not [sic] limited to the community property residence located at 5787 Lone Star Dr. San Diego, CA 92120 and the community property vehicles.

On or about January 10, 1997, Creditor recorded an abstract of the Superior Court's judgment against Debtor's real property, including Debtor's residence (the "Residence"). On January 24, 1997, Debtor filed his petition for relief under Chapter 7. The record does not indicate when a divorce decree and final distribution of property was entered by the Superior Court, although the parties to the appeal appear to concede that Debtor now owns the Residence free and clear of any community or joint interests of Former Spouse.[5] In his brief, Debtor indicates that Former Spouse conveyed her interests in the Residence to Debtor via a quitclaim deed on December 10, 1996 (i.e., after entry of the fee award order but before recordation of Creditor's abstract of judgment), but there is nothing in the record to support this allegation. In any event, at the time the Superior Court imposed the lien on the community property including the Residence (on November 26, 1996), Debtor held a community property interest in the Residence.[6]

■ On or about May 14, 1997, Debtor filed a motion to avoid Creditor's lien on the Residence pursuant to 11 U.S.C. § 522(f). The motion is skeletal and does not indicate the value of the Residence or the amount of consensual liens against the Residence.[7] Moreover, Debtor failed to disclose the precise nature of his property interest in the Residence (i.e., community v. separate).

■ Creditor opposed the motion,[8] arguing that Debtor acquired his interest in the

---

4. A "Borson" motion is filed under the authority of (*In re Marriage of Borson*), 37 Cal.App.3d 632, 112 Cal.Rptr. 432 (1974); by this motion, Creditor requested that the fees necessarily incurred in representing Former Spouse be determined a community obligation and paid from community property.

5. Debtor's schedules state that he owns a fee simple interest in the Residence. In its pleadings filed with the bankruptcy court, Creditor acknowledged that "[h]ere the debtor claims the *entire* property interest in the personal residence. At the time the lien attached, he did not have that interest." (Emphasis added.)

6. In its memorandum of points and authorities in opposition to the motion to avoid lien filed with the bankruptcy court, Creditor admitted that "the residential property was acquired as community property. *In addition, the Court's order creating the lien* [citation omitted] *establishes that the property, at the time of the imposition of the lien, was community property.* No divorce de-

cree had been entered and thus no separate property had been created." (Emphasis added.)

7. Debtor's schedules, which are part of the record on appeal, indicate that the value of the Residence was $142,000, that other liens on the Residence equalled $131,000, and that the value of the claimed exemption was $5000. Based on these figures, Creditor could have argued that at least a portion of its lien would have survived a section 522(f) motion, inasmuch as Debtor may have equity in the Residence which exceeded the amount of his claimed exemption and the other liens. (*See* section 522(f)(2)(A)). Creditor, however, did not raise this or any other valuation issue with the court below or on appeal. Consequently, the issue is waived. *McCrary v. Barrack (In re Barrack)*, 217 B.R. 598, 602 n. 2 (9th Cir. BAP 1998) (failure to raise argument on appeal prevents review of unasserted issue).

8. Creditor has not attempted, in either its opposition below or in this appeal, to argue that its judicial lien falls within the exception of section

property after the "fixing" of the lien, and thus could not avoid the lien under *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). Even though Creditor conceded in its opposition that Debtor claimed a separate property interest in the Residence (*see* footnote 5 above), the statements of Creditor's counsel at the hearing below appear to be inconsistent with that concession (and with Creditor's *Farrey* argument). The transcript indicates that at the hearing, Creditor's counsel noted that the lien attached to "the entire community *which still exists as far as I know.*" (Emphasis added.) Creditor then appeared to argue, as a general principle, that a debtor who files an individual case cannot avoid a lien on community property. The bankruptcy court focused on this erroneous position, and correctly overruled that particular objection.[9] Unfortunately, the parties' vague oral arguments at the hearing distracted the court from the issue presented in the opposition papers and on appeal: Can a debtor avoid a lien placed on a community property residence if the residence thereafter becomes debtor's separate property? Despite the confusing oral arguments, the bankruptcy court did find that *Farrey* was inapplicable to the judicial lien before it [10] and granted the motion to avoid the lien. Creditor appeals that order.

## II.

### ISSUE

Whether Debtor can utilize section 522(f)(1) to avoid a judicial lien imposed on the Residence while Debtor held a community property interest in the Residence, where Debtor subsequently acquired sole ownership of the Residence.

## III.

### STANDARD OF REVIEW

The parties to this appeal have not presented any disputed material facts. Thus, whether Creditor's judicial lien was avoidable pursuant to section 522(f)(1) is a question of bankruptcy law that the panel reviews *de novo. Foss v. Foss (In re Foss ),* 200 B.R. 660, 661 (9th Cir. BAP 1996); *Yerrington v. Yerrington (In re Yerrington ),* 144 B.R. 96, 98 (9th Cir. BAP 1992), *aff'd,* 19 F.3d 32, 1994 WL 68254 (9th Cir.1994).

## IV.

### DISCUSSION

In *Farrey,* the Supreme Court held that a debtor may not use section 522(f)(1) to avoid the fixing of a lien created by a divorce decree that extinguishes all previous interests the parties had in the family homestead.[11] There, and in the cases which follow it, the judicial lien at issue never attached to the debtor's prior undivided interest; instead, it attached to the newly-created interest. Seeking to extend this holding to other circumstances, Creditor contends that Debtor cannot avoid Creditor's judicial liens on the Residence, where Debtor acquired sole ownership of the Residence *after* the Creditor's lien attached, even though the Debtor still held a community property interest in the Residence when the Creditor obtained

522(f)(1)(A)(i), which prevents a debtor from avoiding a judicial lien that secures a debt to a spouse, former spouse, or child for alimony, maintenance or support. At the hearing on the motion to avoid the lien, Debtor's counsel repeatedly noted that this exception was inapplicable, even though Creditor never asserted that it was applicable.

**9.** If the Residence had been community property as of the petition date, Debtor would have had the right to claim his homestead exemption and, assuming all other elements of section 522(f) were satisfied, to avoid a judicial lien that impaired that exemption. "The filing by a spouse of an individual bankruptcy petition creates an estate which encompasses community property that is under the spouse's joint management and

control as of the date of the petition. The right to claim exemptions rests solely in that spouse." *Burman v. Homan (In re Homan ),* 112 B.R. 356, 359 (9th Cir. BAP 1989) (citations omitted).

**10.** At the hearing on the motion to avoid the lien, the court stated:

*Farrey* is not applicable to this... *Farrey* was not applicable because *Farrey* created the interest upon the dissolution when the court divided the property, the judgment creditor did not acquire the interest until that occurred and there was no prior interest—a little bit of fiction but nevertheless one employed by the Supreme Court in handling that situation.

**11.** See footnote 3.

the lien on all community property including the Residence. Creditor's argument, however, fails to acknowledge the critical distinction between this case and the *Farrey* case. Here, unlike *Farrey* and its progeny, the judicial lien attached to the Debtor's community property; Debtor held this community property interest before the lien attached. In the other cases, the lien attached to newly-created property interests and the debtors did not hold those interests before the fixing of the lien. As a result of this material distinction, Debtor can avoid the lien under the "critical inquiry" of *Farrey:*

> As before, the critical inquiry remains whether the debtor ever possessed the interest to which the lien fixed, before it fixed. If he or she did not, [section] 522(f)(1) does not permit the debtor to avoid the fixing of the lien on that interest.
>
> \*   \*   \*   \*   \*   \*
>
> We hold that [section] 522(f)(1) of the Bankruptcy Code requires a debtor to have possessed an interest to which a lien attached, before it attached, to avoid the fixing of the lien on that interest.

*Farrey,* 500 U.S. at 299 and 301, 111 S.Ct. 1825.

Section 522(f)(1) allows a debtor to "avoid *the fixing of a lien* on an interest of the debtor in property to the extent that such lien impairs an exemption to which debtor would have been entitled under subsection (b) of this section, if such lien is (A) a judicial lien ..." (emphasis added). In 1994, this subsection was amended to prevent debtors from avoiding, pursuant to section 522(f)(1), judicial liens securing certain alimony, maintenance or support debts to a spouse, former spouse or child of a debtor. *See* 11 U.S.C. § 522(f)(1)(A).[12] Prior to this revision, many debtors attempted to utilize section 522(f)(1) to avoid marital or support liens; courts varied widely in determining whether section 522(f)(1) could be used in such a manner. *See* Sheryl Scheible Wolf, *Divorce, Bankruptcy, and Metaphysics: Avoidance of Marital Liens under § 522(f) of the Bankruptcy Code,* 31 Fam. L.Q. 513 (1997).

Upon this stage, the Supreme Court issued its decision in *Farrey* and held that, under the particular facts of that case, the debtor husband could not avoid his former wife's lien in his residence under section 522(f)(1). *Farrey,* 500 U.S. at 295, 111 S.Ct. 1825.

In *Farrey,* the Wisconsin state divorce court awarded one-half of the marital property to each spouse. Pursuant to that property division, the court allowed the husband (Sanderfoot) to retain the family residence but ordered him to pay his ex-wife (Farrey) approximately $30,000 to equalize the division of assets. *Id.* at 293, 111 S.Ct. 1825. To secure payment, the court granted Farrey a lien on the residence. Four months later, Sanderfoot—who had never made any of the payments required by the state court—filed for relief pursuant to chapter 7, claimed his homestead exemption in the residence, and sought to avoid Farrey's lien on the residence pursuant to section 522(f) (as written before the 1994 amendments). *Id.* at 293–94, 111 S.Ct. 1825. Significantly, Sanderfoot conceded that the divorce decree in that case operated to "wholly" extinguish his previous interests in the Residence. *Id.* at 299, 301–02, 111 S.Ct. 1825. Therefore, Farrey's lien encumbered *only* Sanderfoot's wholly new fee simple interest, not any pre-existing interests that Sanderfoot may have had in the residence prior to the divorce decree. In other words, the *Farrey* lien—in contrast to the explicit language of the judicial lien in the case before the panel—did not attach to the joint property interests of Sanderfoot and Farrey:

> [T]he only interest that the lien encumbers is debtor's wholly new fee simple interest. The same decree that awarded Sanderfoot his fee simple interest *simultaneously* granted the lien to Farrey. As the judgment stated, he acquired the property "free and clear" of any claim "except as expressly provided in this [decree]." *Sanderfoot took the interest and the lien together, as if he had purchased an already encumbered estate from a third party.*

---

12. As previously noted, Creditor has not attempted to argue that its lien falls within this exception.

*Since Sanderfoot never possessed his new fee simple interest before the lien "fixed," § 522(f)(1) is not available to void the lien.* *Id.* at 299–300, 111 S.Ct. 1825 (emphasis added) (citation to record omitted).

Unlike the lien in *Farrey*, the lien in this case explicitly encumbered the community property of Debtor and Former Spouse. Further, unlike *Farrey*, the creation of Creditor's judicial lien (by the November 26, 1996 order) was an event separate from—not simultaneous with—the transformation of Debtor's community property into separate property (by deed dated December 10, 1996).[13] Moreover, unlike *Farrey*, when Creditor's lien was created, Debtor still held a community property interest in the Residence. (*See* footnote 6).

■ In reaching its holding, the Supreme Court repeatedly emphasized that lien avoidance is appropriate only where the lien attaches to the debtor's interest at some point after the debtor obtained the interest, stating that a debtor cannot avoid a judicial lien unless he *"had the property interest to which the lien attached at some point before the lien attached to that interest ..."* *Id.* at 296, 111 S.Ct. 1825 (emphasis added). The Court therefore noted the "critical inquiry" in determining whether a lien is subject to avoidance under section 522(f) was a determination "whether the debtor ever possessed the interest *to which the lien fixed,* before it fixed..." *Id.* at 299, 111 S.Ct. 1825 (emphasis added). Under the particular facts of *Farrey*, the Supreme Court found that the lien affixed to the debtor's sole ownership interest which he did not possess before the lien was fixed. In the case before the panel,

however, the lien in question affixed to Debtor's community property interests, which Debtor held *before* the lien was fixed. Stated differently, Debtor "possessed the interest [the community property interest] to which the lien fixed, before it fixed." *Id.*. Under the "critical inquiry" of *Farrey*, therefore, the lien can be avoided.

Court decisions applying *Farrey's* concept of "fixing" of a lien have uniformly held that various divorce decrees operated to extinguish the pre-existing interests of the debtor and that the liens of the non-debtor spouse "fixed" before the creation of the debtor's new property interest. *See Catli v. Catli (In re Catli)*, 999 F.2d 1405 (9th Cir.1993) (holding that, under Washington law, judicial lien of nondebtor spouse fixed before debtor spouse acquired his "new" interest in property in divorce decree); *Nelson v. Barnes (In re Barnes)*, 198 B.R. 779, 782–83 (9th Cir. BAP 1996) (holding that, under California law, dissolution gave debtor spouse a "new" interest in property and that lien of nondebtor spouse did not attach to that new property interest); *Foss*, 200 B.R. at 662 (applying Washington law); *Yerrington*, 144 B.R. at 99–100 (applying Alaska law). These cases have generally involved the protection of a former spouse's lien created at the time the debtor's augmented ownership interest was created. In essence, the lien was part of the consideration paid by the debtor to acquire sole ownership. These cases are therefore distinguishable from the case before the panel, which involves a lien imposed while the debtor still held a community interest in the property.[14] The panel acknowledges that the lien of Creditor did not arise from a tradi-

---

**13.** This distinction is of particular significance. In *Farrey*, Sanderfoot took his sole property ownership interest simultaneously with the creation of the lien encumbering that interest. In the case before the panel, however, the Superior Court imposed the lien while the Residence was still community property; the creation (if indeed it exists) of Debtor's separate property interest did not occur as part and parcel of the transaction in which the lien was created.

**14.** Only two reported decisions have involved third-party creditors attempting to use *Farrey* to prevent avoidance of liens which attached to pre-existing property interests of the debtors. In the first case—*In re Ulmer*, 211 B.R. 523, 524

(Bankr.E.D.N.C.1997)—the court held that the lienholder's interpretation of *Farrey* "is inconsistent with the provision's [section 522(f)] main purpose, is not fair, and is contrary to common sense."

In contrast, the court in *In re Mingo*, 189 B.R. 514, 515–16 (Bkrtcy.D.Idaho 1995) allowed a nonspousal, commercial creditor to preserve a judicial lien that had attached to the debtor's community property while he was still married. Interestingly, the *Mingo* court nevertheless conceded that had the spouses filed for bankruptcy prior to divorce, the lien would have been avoidable.

tional third-party lawsuit and the underlying debt arose in a divorce action. The lien nevertheless was *not* created simultaneously with the termination of the marriage and the transformation of Debtor's interests in the Residence. It is not a lien in favor of Former Spouse.

While a debtor may not avoid a lien that attached before he held *any* interest in the property, it does not necessarily follow that a debtor cannot avoid a lien merely because his property interests were augmented after attachment of the lien. If a debtor could have avoided such a lien on community-held real property pursuant to section 522(f)(1) before acquiring sole ownership of the property, that debtor should not lose the right to avoid that same lien after acquiring sole ownership. Otherwise, a judgment creditor whose debtor happens to obtain a divorce after the lien is affixed on community property is fortuitously excluded from the lien avoidance scope of section 522(f)(1), while a creditor whose debtor remains married after the lien is affixed on real property is subject to having its lien avoided under that section. There is no basis in section 522(f)(1) for such an arbitrary distinction. Applying *Farrey* under such circumstances to preclude the avoidance of a third-party lien "is inconsistent with [section 522(f)'s] main purpose, is not fair, and is contrary to common sense." *Ulmer*, 211 B.R. at 524. Instead, *Farrey's* focus on the time of lien attachment should be sufficient to prevent efforts by a debtor to avoid a judgment lien that is created as part and parcel of the creation of the interest that it encumbers.

As noted in footnote 3, the panel believes that the language of the Supreme Court in *Farrey* specifically limited its holding to liens created simultaneously with the creation of the "new" property interests. The Supreme Court adopted the reasoning and holding of the dissenting judge in the lower circuit court, and described the dissent in the following terms:

> Judge Posner concluded that because the same decree that gave the entire property to Sanderfoot simultaneously created the lien in favor of Farrey, the lien did not attach to a pre-existing interest of the husband.

500 U.S. at 295, 111 S.Ct. 1825 (emphasis added). In contrast, because Creditor's judicial lien in this case was not imposed simultaneously with the creation of the Debtor's fee simple interest in the Residence and did in fact attach to a pre-existing interest of Debtor, the bankruptcy court correctly noted that the *Farrey* holding was inapplicable.

## V.

## CONCLUSION

Because the *Farrey* holding is inapplicable to the facts of this case and because Debtor held a pre-existing interest in the property to which Creditor's judicial lien attached, when it attached, the bankruptcy court correctly held that the judicial lien was subject to avoidance under section 522(f). Accordingly, we AFFIRM.