**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos. ID-18-1196-BGF |
| | ID-19-1004-BGF |
| PRAVEEN KEVIN KHURANA, | ID-19-1093-BGF |
| | (Related Appeals) |
| Debtor. | |
| | Bk. No. 3:13-bk-20058-TLM |
| PRAVEEN KEVIN KHURANA, | |
| | Adv. No. 3:19-ap-07001-TLM |
| Appellant, | |
| v. | MEMORANDUM* |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | |
| Appellee. | |

Argued and Submitted on October 25, 2019
at San Francisco, California

Filed – December 16, 2019

Appeal from the United States Bankruptcy Court
for the District of Idaho

---

*  This disposition is not appropriate for publication.  Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Terry L. Myers, Bankruptcy Judge, Presiding

———————

Appearances:    Appellant Praveen Kevin Khurana argued pro se; Douglass E. Fleenor, Deputy Attorney General, argued for appellee State of Idaho, Department of Health and Welfare.

———————

Before:    BRAND, GAN and FARIS, Bankruptcy Judges.

## INTRODUCTION

This case stems from the multiple transfers of real property known as the Preston Property between appellant Praveen Khurana, Delores Adamson, now deceased, and John Perry. The catalyst for these appeals is an order the bankruptcy court entered on November 27, 2017 ("November 27 Stay Order"), which Khurana did not appeal.

In 2017, four years after Khurana had received a chapter 7[1] discharge, the Department of Health and Welfare for the State of Idaho ("State") sought to recover the Preston Property from Khurana in the Idaho state court (the "Medicaid Action"). The State believed that Adamson's transfer of the Preston Property to Khurana was fraudulent and recoverable as reimbursement for

———————

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

Adamson's outstanding Medicaid debt.[2] Once the Idaho state court learned that Khurana had reopened his closed bankruptcy case, it stayed the Medicaid Action. The State then sought relief from the automatic stay in the bankruptcy court to continue with the Medicaid Action. The bankruptcy court entered the November 27 Stay Order, denying the State's motion as moot; no stay applied in Khurana's case. The bankruptcy court further ordered that the Idaho state court could proceed to hear any matters related to Khurana's "postpetition conduct" and "activities or interests" Khurana acquired "postpetition."

The State ultimately obtained a judgment in the Medicaid Action in 2018 (the "Transfer Judgment"),[3] voiding the deeds transferring the Preston Property to Khurana. Thereafter, Khurana sought relief from the bankruptcy court to void that litigation and the resulting judgment and the State's recovery of the Preston Property.

Khurana filed motions and an adversary proceeding asserting that the

---

[2] After the death of a Medicaid recipient, the State is authorized (and required by federal law) to recover the paid benefits from the recipient's estate. The estate includes assets that the recipient disposed of prior to death without adequate consideration, including transfers of property. The State maintained that, under Idaho and federal law, it could seek to avoid any fraudulent transfers by Adamson of the Preston Property dating back five years from the date she applied for Medicaid benefits — i.e., any transfers on or after August 1, 2002. *See* Idaho Code Ann. § 56-218(2).

[3] The state court later entered an amended Transfer Judgment, to include the avoidance of a Quitclaim Deed to Adamson's son dated July 17, 2007. The Idaho Court of Appeals has since affirmed the amended Transfer Judgment. *See Idaho Dep't of Health & Welfare v. Khurana*, Case No. 46030, 2019 WL 2525850 (Idaho Ct. App. June 19, 2019).

Transfer Judgment and the State violated the November 27 Stay Order, the automatic stay and the discharge injunction. He also sought to avoid the Transfer Judgment as a lien under § 522(f) and sought damages for contempt against the State. The bankruptcy court denied all of the requested relief and it is these orders that are the subject of Khurana's appeals. Khurana appeals: (1) an order denying his motion for violation of the automatic stay, the November 27 Stay Order, and the discharge injunction; (2) an order denying his motions to (a) avoid a judgment lien under § 522(f), (b) void postpetition state court orders, and (c) confirm the State's violation of the automatic stay; and (3) an order granting the State's motion to dismiss Khurana's adversary proceeding.

None of Khurana's arguments on appeal has merit. He argues that the State violated the automatic stay. This argument is wrong because the stay expired by operation of law when Khurana received his discharge in 2013. The State did not violate the stay when it sued Khurana in 2017, because the stay did not exist at that time. The State also did not violate the discharge injunction. The discharge injunction only applies to debts that arose before Khurana filed his bankruptcy petition. The State's claim did not arise before Khurana filed his petition; it arose in 2016 when Adamson passed away. Thus, the State's rights were not subject to Khurana's discharge. In addition, the discharge only protects a debtor from personal liability on discharged debts. The State did not seek to hold Khurana personally liable for Adamson's

4

Medicaid debt – the State only sought recovery of the Preston Property which it asserted was fraudulently transferred to Khurana. The discharge does not protect the Preston Property. Because the November 27 Stay Order allowed the Medicaid Action to proceed, there was also no violation of the November 27 Stay Order. Finally, the bankruptcy court properly found that the Transfer Judgment could not be avoided under § 522(f). Accordingly, we AFFIRM.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.      The transfers and Khurana's bankruptcy case**

Adamson applied for Medicaid benefits on August 1, 2007. The State provided medical benefits to Adamson until her death on October 6, 2016. Adamson's estate owed the State $239,781.80 in Medicaid debt.

Adamson acquired her 100% interest in the Preston Property by 1994. The transfers of the Preston Property began in 2006 and are as follows:

- November 17, 2006, Adamson executed a Warranty Deed conveying one-half of the Preston Property to Khurana; deed recorded on November 27, 2006;

- May 9, 2012, Khurana executed and recorded a Warranty Deed conveying his one-half interest in the Preston Property to Adamson;

- August 13, 2012, Adamson executed and recorded a Quitclaim Deed conveying the Preston Property to both Adamson and Khurana as "tenants in entirety";

- May 9, 2012, Adamson executed a Quitclaim Deed conveying her one-half interest in the Preston Property to Khurana; deed recorded on July 31, 2013;

- April 28, 2016, Khurana executed a "Corrected" Quitclaim Deed conveying the Preston Property to Perry for the sum of One Dollar; deed recorded on September 12, 2016;

- December 26, 2017, Perry executed and recorded a Quitclaim Deed conveying the Preston Property back to Khurana for the sum of One Dollar.

Khurana filed a chapter 13 bankruptcy case on January 23, 2013. His case was converted to chapter 7 on May 7, 2013. The deed in effect for the Preston Property on the petition date was the August 13, 2012 Quitclaim Deed. Khurana eventually disclosed an ownership interest in the Preston Property in an amended Schedule A and claimed a homestead exemption for it in an amended Schedule C. The chapter 7 trustee did not object to the claimed homestead exemption. Khurana received a chapter 7 discharge on September 20, 2013. The case was closed as a "no asset" case. Khurana reopened the case in 2015.

## B. Khurana's motion for violation of the automatic stay and discharge injunction and contempt damages (Appeal No. 18-1196)

Following the Transfer Judgment, Khurana filed a Motion for Relief from (1) Violations of Discharge Injunction and Court Order Denying Relief from Lift of Stay and (2) Damages, Costs and Other Appropriate Sanctions for Contempt By State of Idaho ("Contempt Motion"). Khurana argued that the Transfer Judgment violated the automatic stay because stay relief was denied in the November 27 Stay Order yet the State continued to prosecute the

Medicaid Action. Khurana argued that the Transfer Judgment violated the discharge injunction because the deeds that the state court deemed void were all *prepetition* transfers that had been discharged. In other words, Khurana believed that the state court could not set aside any transfers of the Preston Property that occurred *prepetition*.

The bankruptcy court denied the Contempt Motion ("Contempt Order"). It explained that the State's fraudulent transfer claim against Khurana did not "accrue" until Adamson died in October 2016.[4] The court noted that the State was free to pursue whatever postpetition claim it had against Khurana, including the fraudulent transfer claim, regardless of whether the transfers at issue occurred pre- or postpetition. And, the state court was free to evaluate Khurana's interest in the Preston Property and to "adjudicate the validity, and avoidability, of any of the transferred interests."

In rejecting Khurana's argument that the state court could not consider the *prepetition* transfers, the bankruptcy court noted:

> Debtor apparently views this Court's November [27 Stay Order] as insulating the assorted deeds and transfers prior to the petition date from any inquiry, scrutiny or avoidance. That is an over-reading or over-statement. While Debtor had, in this Court's view and analysis, a "tenant in common"[5] interest in the [Preston]

---

[4] *See* Idaho Code Ann. § 56-218(8).

[5] The bankruptcy court had previously found that under Idaho law a "Tenancy in Entirety" applies only to spouses, and there was no evidence that Khurana was ever

(continued...)

7

Property as of his petition date, that interest was "abandoned" by the bankruptcy trustee. But abandonment does not validate the interest claimed. That interest is still subject to otherwise applicable state law. And if state law deems Debtor's interest, held as of bankruptcy, to be void, it is void. This Court abstained and allowed the [Medicaid] [A]ction to proceed to reach such a decision.

Mem. Dec. (July 3, 2018) 6-7. For these reasons, the bankruptcy court found that there was no violation of the discharge injunction, the automatic stay, or the November 27 Stay Order. Khurana timely appealed the Contempt Order.

## C. Khurana's motions to (a) avoid a judgment lien under § 522(f), (b) declare other state court orders void, and (c) confirm the State's violation of the automatic stay (Appeal No. 19-1004)

Khurana then filed three more motions in the bankruptcy court seeking relief from the Transfer Judgment and other proceedings pending against him in the state court. The State did not oppose any of the three motions.

The first motion Khurana filed was the Motion to Avoid Judicial Lien. Khurana sought to avoid what he claimed was a judicial lien on the Preston Property under § 522(f). Khurana argued that the "$283,000 Judgment" had to be avoided because it impaired his unchallenged $100,000 homestead exemption.

The second motion Khurana filed was the Motion to Void Judgment, Orders and Rulings. Khurana asked the bankruptcy court to declare that

---

[5](...continued)
married to Adamson.

other state court proceedings pending against him involving the Preston Property violated the November 27 Stay Order and were outside the scope of what the state court could hear. Specifically, Khurana argued that the State's actions to quiet title to the Preston Property and for his ejectment violated the November 27 Stay Order, and thus the orders entered in those actions were void.

Lastly, Khurana filed a Motion for Order Confirming Stay Violation. This motion consisted of one sentence again alleging that the State had violated the November 27 Stay Order.

The bankruptcy court orally denied each motion for lack of merit. To the extent Khurana was seeking an order confirming a stay violation by the State, that issue had already been decided against him. As for Khurana's request to void state court orders entered against him in the State's actions for quiet title and ejectment, the court noted that the state court was authorized to adjudicate any and all issues involving Khurana and the Medicaid estate recovery; hence, these actions did not violate the November 27 Stay Order and the orders were not void. Lastly, with respect to Khurana's motion to avoid a judicial lien, the court explained that § 522(f) applies only to liens existing at the time of the bankruptcy filing, not to postpetition liens. In any case, Khurana had not established that any judicial liens for the Transfer Judgment or other state court orders had even been filed against the Preston Property. Khurana timely appealed the bankruptcy court's later written

9

order.

**D.    Khurana's adversary proceeding (Appeal No. 19-1093)**

Undeterred, Khurana then filed an adversary proceeding against the State, asserting claims for violations of the November 27 Stay Order, the discharge injunction, and contempt. Khurana alleged that the State had violated the automatic stay and November 27 Stay Order by continuing to prosecute the Medicaid Action and by obtaining the Transfer Judgment, which Khurana asserted was void. Khurana requested that the Preston Property be returned to him.

The State moved to dismiss Khurana's complaint for lack of subject matter jurisdiction. The State argued that the court had already decided the issue of its alleged violation of the November 27 Stay Order in the Contempt Order, and Khurana appealed that ruling to this Panel. Thus, argued the State, the bankruptcy court was divested of jurisdiction to hear a complaint alleging the same claims. Khurana opposed the motion.

The bankruptcy court granted the State's motion to dismiss, ruling that it was divested of jurisdiction over the claims raised in Khurana's complaint. Claims concerning the State's alleged stay or discharge injunction violations had already been raised and decided against Khurana in the Contempt Order, which he appealed to this Panel. The court also found it improper to file an adversary complaint to raise the same issues already raised by motion

and rejected by the court. Khurana timely appealed the dismissal order.[6]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(G) and (K). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.    Did the bankruptcy court abuse its discretion in denying the Contempt Motion?

2.    Did the bankruptcy court err or abuse its discretion in denying the motions to (a) avoid a judgment lien under § 522(f), (b) declare other state court orders void, and (c) confirm the State's violation of the automatic stay?

3.    Did the bankruptcy court err in granting the State's motion to dismiss the adversary complaint?

## IV. STANDARDS OF REVIEW

The bankruptcy court's decision respecting civil contempt and sanctions is reviewed for abuse of discretion. *Rediger Inv. Corp. v. H Granados Commc'ns, Inc. (In re H Granados Commc'ns, Inc.)*, 503 B.R. 726, 731 (9th Cir. BAP 2013). We apply a two-part test to determine whether the bankruptcy court abused its discretion. First, we consider de novo whether the bankruptcy court

---

[6] Although no separate judgment was entered, the bankruptcy court's order became final 150 days after it was entered on the docket — i.e., September 7, 2019. Civil Rule 58(c)(2)(B), Rule 7058. In any case, the separate judgment requirement is not jurisdictional and can be waived. *See Bankers Tr. Co. v. Mallis*, 435 U.S. 381, 384-85 (1978). Khurana has not argued the lack of a separate judgment. Accordingly, he waived his right to require entry of a separate judgment. *Id.* at 386.

applied the correct legal standard. Then, we review the bankruptcy court's factual findings for clear error. *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 611 (9th Cir. BAP 2014) (citing *United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc)). We must affirm the bankruptcy court's factual findings unless we conclude that they are illogical, implausible, or without support in the record. *Id.* at 612 (citing *Hinkson*, 585 F.3d at 1262).

Whether a judicial lien is avoidable under § 522(f) is a question of law we review de novo. *Law Offices of Moore & Moore v. Stoneking (In re Stoneking)*, 225 B.R. 690, 692 (9th Cir. BAP 1998).

Whether the bankruptcy court had subject matter jurisdiction is a question of law we review de novo. *McCowan v. Fraley (In re McCowan)*, 296 B.R. 1, 2 (9th Cir. BAP 2003).

## V. DISCUSSION

**A.  The bankruptcy court did not abuse its discretion in denying the Contempt Motion (Appeal No. 18-1196).**

Nearly all of the eleven issues Khurana raises in his opening brief are not relevant to this appeal. For example, Khurana spends the majority of his time arguing that the bankruptcy court erred by abstaining from hearing the fraudulent transfer dispute and allowing the state court to do so. The bankruptcy court's decision to abstain was the subject of the November 27 Stay Order, which Khurana did not appeal. That decision is final. Therefore, we have no jurisdiction over the abstention issue and are unable to address it. *Tucker v. Sambo's Rest., Inc. (In re Sambo's Rest., Inc.)*, 27 B.R. 630, 631 (9th Cir.

12

BAP 1983) (once an order has become final because no appeal is taken, appellate courts are without jurisdiction over that matter). For the issues he raises that are relevant, we are not persuaded by Khurana's arguments.

Khurana continues to argue that the State violated the automatic stay by ignoring the bankruptcy court's ruling in the November 27 Stay Order and proceeding to judgment in the Medicaid Action. We disagree. As the bankruptcy court explained in its oral ruling, one reason it denied stay relief was because the State's request was moot. The automatic stay was not in effect at the time the State requested relief in October 2017; it had been replaced by the discharge injunction upon Khurana's discharge in September 2013. *See* § 362(c)(2)(C).[7] Thus, the State had not violated the automatic stay by continuing to prosecute the Medicaid Action. The bankruptcy court further denied stay relief because it was abstaining from hearing the disputed property transfer matter. The Idaho state court ultimately determined that the transfers of the Preston Property from Adamson to Khurana were fraudulent, without adequate consideration, and that the three deeds at issue were void.

Khurana argues that the Idaho state court was prohibited from voiding the prepetition transfers of the Preston Property due to the discharge injunction and his asserted homestead exemption. Khurana's view that the

---

[7] Also, the reopening of Khurana's case in 2015 did not revive the automatic stay. *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 914 (9th Cir. BAP 1999) ("[T]o the extent that the automatic stay expired in conjunction with closing, it does not automatically spring back into effect."). Therefore, the State did not need to seek stay relief in October 2017.

13

state court was prohibited from considering or avoiding the prepetition deeds and transfers is wrong. The bankruptcy court explained in detail why that argument failed, and we agree with its analysis.

Khurana filed his bankruptcy case in January 2013. He received a discharge of debts for which he was personally liable in September 2013. His interest in the Preston Property, whatever it was on the petition date, was abandoned by the bankruptcy estate and was therefore not property of the estate. The estate's abandonment of the Preston Property did not adjudicate Khurana's interest in that property under state law. Under Idaho law, the State's fraudulent transfer claim against Khurana — which is an *in rem* right not subject to Khurana's discharge[8] — did not accrue until Adamson died in October 2016. And, contrary to Khurana's position, the State could not pursue any recovery against him for Adamson's estate until after she had passed.[9] The State was free to pursue the Medicaid Action against Khurana, since that cause of action accrued more than three years after he filed his bankruptcy petition. As part of that litigation, the state court could evaluate Khurana's interest in the Preston Property and "adjudicate the validity, and avoidability,

---

[8] The discharge only protects the debtor from "personal liability" on discharged debts. § 524(a)(1), (2). The State has never attempted to hold Khurana personally liable for Adamson's Medicaid debt. Rather, the State only sought recovery of the property that Adamson fraudulently transferred to Khurana. The discharge protects Khurana from personal liability, but it does not protect the Preston Property.

[9] *See* Idaho Code Ann. § 56-218(1)(a) ("There shall be no adjustment or recovery until after the death of . . . the individual[.]").

of any of the transferred interests," even if the transfers of interests involved transfers that occurred prepetition. Accordingly, neither the State nor the Transfer Judgment violated the automatic stay, the discharge injunction, or the November 27 Stay Order.

Khurana fails to assert any argument for why the bankruptcy court's decision here was erroneous, other than arguing that the court erred by abstaining. However, as we have explained above, we cannot consider that argument because the court's decision to abstain was set forth in the November 27 Stay Order, which Khurana did not appeal.

The only other discernable and possibly relevant argument Khurana raises is that the Contempt Motion should have been granted because the State did not appear for the hearing or serve him with its opposition. Khurana did not raise these issues before the bankruptcy court. Nonetheless, to the extent he raises due process concerns with the alleged lack of service, that argument lacks merit. Khurana was the movant for the Contempt Motion, he was allowed to make additional arguments at the hearing, and the bankruptcy court entered its findings of fact and conclusions of law on the record. Thus, he received sufficient due process, even if the State failed to serve him with its opposition, which has not been established in the record. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (due process requires notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their

15

objections). In fact, the certificate of service attached to the State's opposition demonstrates that he was served. On that same note, Khurana argues that if we "strike" the State's opposition for lack of service, then he should be granted relief. As noted, Khurana has not established that he was not served with the opposition. But even if he was not, that does not mean he was entitled to the relief he requested in the Contempt Motion. As the bankruptcy court found, and we agree, the motion lacked merit.

Accordingly, the bankruptcy court did not abuse its discretion in denying the Contempt Motion.

**B. The bankruptcy court did not err or abuse its discretion in denying the motions to (a) avoid a judgment lien under § 522(f), (b) declare other state court orders void, and (c) confirm the State's violation of the automatic stay (Appeal No. 19-1004).**

Again, Khurana raises many irrelevant issues and arguments in his opening brief on appeal. He further fails to assert any cogent argument for how the bankruptcy court erred in denying all three of his motions. In any case, we discern no error or abuse of discretion by the bankruptcy court.

In his series of three motions, Khurana's first motion sought to avoid what he claimed was a judicial lien on the Preston Property under § 522(f). Subject to certain exceptions not relevant here, § 522(f)(1)(A) provides that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such

lien is — (A) a judicial lien. . . ." The bankruptcy court found that Khurana failed to establish that a judicial lien even existed against the Preston Property. However, even if it did, the court declined to grant Khurana relief because § 522(f)(1)(A) applies to prepetition, not postpetition, judgment liens. We further observe that, based on the Transfer Judgment and the avoidance of the prepetition deeds, Khurana had no interest in the Preston Property to which the lien "fixed" at the time he filed his bankruptcy petition in January 2013. *See Goswami v. MTC Distrib. (In re Goswami)*, 304 B.R. 386, 392 (9th Cir. BAP 2003) (a debtor's § 522(f) lien avoidance rights are determined as of the petition date). Thus, for many reasons, relief under § 522(f)(1)(A) was not available to Khurana.

Khurana's second motion asked the bankruptcy court to declare that the orders entered by the Idaho state court in the State's actions against him for quiet title and ejectment were void, because they were entered in violation of the November 27 Stay Order. As the bankruptcy court noted, the state court was authorized to adjudicate all issues involving Khurana and the State's attempts to recover the Preston Property for repayment of Adamson's Medicaid benefits. Therefore, the orders entered in the quiet title and ejectment actions did not violate the November 27 Stay Order and were not void.

Finally, Khurana's third motion sought confirmation that the State had violated the November 27 Stay Order. The motion, which consisted of one

sentence, was merely a rehash of the same argument that Khurana has been making since the Contempt Motion and that the bankruptcy court already rejected in the Contempt Order. As we and the bankruptcy court have stated, the State did not violate the November 27 Stay Order.

**C.     The bankruptcy court did not err in dismissing the adversary proceeding (Appeal No. 19-1093).**

In his opening brief, Khurana identifies thirteen issues. With the exception of number 1, all of these issues were copied from his list of issues in Appeal No. 18-1196, and are unrelated to the bankruptcy court's decision to dismiss the adversary proceeding. The only relevant issue Khurana raises is whether the dismissal of the complaint was appropriate. However, he does not present any argument as to why dismissal was not appropriate.

In his adversary complaint, Khurana brought claims for violations of the November 27 Stay Order, the discharge injunction, and contempt. Again, these claims centered around Khurana's incorrect belief that the State had violated the November 27 Stay Order. The bankruptcy court dismissed the adversary complaint on the basis that it lacked jurisdiction over it, because claims about the State's alleged stay and discharge injunction violations had been raised by Khurana and decided against him in the Contempt Order, and Khurana had appealed that order to the Panel.

Although not articulated by the State or the bankruptcy court, we construe the State's motion to dismiss as one under Civil Rule 12(b)(1) for lack of subject matter jurisdiction. The bankruptcy court was correct to dismiss the

18

adversary complaint. It was divested of jurisdiction over the issue of the State's alleged stay and discharge injunction violations once Khurana filed the notice of appeal of the Contempt Order. "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)*; see also Sherman v. SEC (In re Sherman)*, 491 F.3d 948, 967 (9th Cir. 2007) (a notice of appeal typically divests a bankruptcy court of jurisdiction over aspects of the case involved in the appeal).

However, even if the bankruptcy court had jurisdiction to consider the State's alleged violations of the automatic stay or discharge injunction, contempt proceedings for violation of the discharge injunction must be initiated by motion under Rule 9014 and not by adversary proceeding. *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190-91 (9th Cir. 2011); Rule 9020. Presumably this rule also applies to contempt proceedings for violation of the automatic stay. *See Zilog, Inc. v. Corning (In re Zilog)*, 450 F.3d 996, 1008 n.12 (9th Cir. 2006) (noting that contempt orders for violations of either the discharge injunction or the automatic stay are governed by the same standards). Thus, Khurana's adversary proceeding was procedurally improper, and the bankruptcy court could have also dismissed it on that basis.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.